936 P.2d 1316

**Russell and Patricia REED, husband and wife, Plaintiffs–Appellants,**

**v.**

**Daniel Trevor FOSTER, an individual, Daniel R. Bartlett, as statutory trustee of Bartlett's, Inc., a defunct Idaho corporation; and Daniel R. Bartlett as a responsible officer, director, and shareholder of Bartlett's, Inc., a defunct Idaho corporation, Defendants–Respondents.**

**No. 22223.**

Supreme Court of Idaho, Boise, January 1997 Term.

April 30, 1997.

Lawrence G. Sirhall, Jr., argued, Iver J. Longeteig III, Boise, for appellants.

Lynn, Scott, Hackney & Jackson, Boise, for respondent. J. Gardiner Hackney, Jr., argued, Boise.

TROUT, Chief Justice.

This is an appeal from a jury verdict in favor of defendant Bartlett's, Inc., (Bartlett's) in a personal injury action brought under I.C. § 23–808, Idaho's dram shop/social host liability statute.

## I.

## BACKGROUND

This suit arises out of an automobile accident which occurred on June 1, 1993, when Daniel Foster, traveling approximately 80 m.p.h., rear-ended the car of plaintiffs Russell and Patricia Reed. The Reeds suffered severe injuries as a result of the accident. Foster, legally intoxicated at the time, was arrested, charged with aggravated driving under the influence (DUI), convicted, and sentenced to the Idaho State Penitentiary where he resided at the time of the trial in this case.

The manner in which Foster became intoxicated is at issue. On June 1, Foster began his morning by drinking several beers in his apartment. Around 11:00 a.m., he walked one block to Ves' Broadway Bar (Bar), owned by Bartlett's, where he consumed more alcohol. The quantity of alcohol that Foster consumed at the Bar and Foster's demeanor and appearance when he was served is hotly contested. The Reeds contend that he drank several rum-and-Cokes and several beers. He then walked home where he drank several more beers. Foster then returned to the Bar and allegedly drank seven or eight rum-and-Cokes and several more beers. Around 3:00 p.m., he returned home where he spoke with a neighbor, who testified at trial that Foster appeared slightly intoxicated at the time. Foster walked back to the bar and continued to drink. He returned home between 4:45 and 5:00 p.m. and again spoke with his neighbor and his roommate. Foster then walked back to the Bar and allegedly drank two more rum-and-Cokes, although the bartender on duty, Nancy Miller, testified that she only served him one drink at that time. Daniel Bartlett, one of the trustees of Bartlett's, saw Foster at this time, and both Bartlett and Miller testified that Foster

did not appear drunk. At 5:50 p.m., Foster returned home; neither Bartlett nor Miller saw him leave.

Upon returning to his apartment and retrieving his car keys, Foster got into his car and drove south on Broadway Avenue in Boise. At 6:10 p.m., he rear-ended the Reeds' car, resulting in severe injuries to the Reeds. The police administered field sobriety tests to Foster on their arrival, which Foster failed, and thereafter arrested Foster. Foster's blood was drawn at 7:00 p.m., which revealed that his blood alcohol content (BAC) was .25, well over the legal limit of .10.

## II.

### PROCEDURAL HISTORY

On April 1, 1994, the Reeds filed a personal injury suit against Foster, Bartlett individually, and Bartlett's. Foster did not appear, and the court entered a default judgment against him in the amount of $1,806,641.01. The court dismissed the suit against Bartlett individually. The Reeds based their action against Bartlett's on Idaho's dram shop/social host liability statute, I.C. § 23–808. The jury returned a verdict in favor of Bartlett's, and the Reeds moved for a new trial, which the court denied.

On appeal, the Reeds contest two pretrial rulings made by Judge McKee.[1] First, Bartlett's filed a motion in limine to exclude a portion of the anticipated opinion testimony of the Reeds' expert witness, Wally Baker, who was prepared to testify that Foster, with a BAC of .25 at the time of the accident, would have shown visible signs of obvious intoxication between 5:00 and 6:00 p.m. in the Bar. The court ruled that Baker could testify in general terms that, in his expert opinion, an individual with a BAC of .25 would exhibit particular symptoms. The court stated, however, that Baker could not offer his opinion that Foster specifically would have demonstrated such signs while in the Bar. The Reeds' second assignment of error is the court's ruling on their motion to transport. The Reeds filed a motion pursuant to I.C. § 19–4601, which Bartlett's joined,

asking the court to order Foster transported from prison for purposes of testifying at the trial. The court denied the motion and ruled that the parties would have to use Foster's deposition, taken during discovery on June 3, 1994, in lieu of transport. The court allowed this deposition to be read to the jury.

## III.

### MOTION TO TRANSPORT

■ The Reeds based their motion to transport on I.C. § 19–4601, which provides: "When it is necessary to have a person imprisoned in the state prison brought before any court, . . . an order for that purpose *may be made* by the court" (emphasis added). This section vests the court with discretion in determining whether to issue such an order. We thus review the lower court's ruling on the Reeds' motion to transport for an abuse of discretion. The test for determining whether a court has abused its discretion consists of three inquiries: (1) whether the court correctly perceived the issue as one of discretion, (2) whether the court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it, and (3) whether the court reached its decision through an exercise of reason. *Burgess v. Salmon River Canal Co., Ltd.*, 127 Idaho 565, 573, 903 P.2d 730, 738 (1995) (citing *Rhodehouse v. Stutts*, 125 Idaho 208, 213, 868 P.2d 1224, 1229 (1994)).

■ We hold that the court in this case did not abuse its discretion in denying the Reeds' motion to transport Foster for purposes of testifying at trial. First, the court correctly perceived the issue as one of discretion. In addition to the language of § 19–4601, the other relevant code section clearly indicates that the decision to order transport is discretionary. Section 9–711, which falls within the portion of the Idaho Code addressing the means of producing evidence, provides:

If the witness be a prisoner, confined in a jail or prison within this state, an order

1. Although Judge McKee heard and decided the pretrial motions, Judge Becker presided over the trial. The "court" for purposes of this opinion is Judge McKee.

... for his temporary removal and production before a court ... for the purpose of being orally examined, *may be made* by any justice of the Supreme Court or judge or magistrate of the district court.

(emphasis added). Secondly, in denying the motion, the court acted within the outer boundaries of this discretion and consistently with applicable legal standards. Finally, the court reached its decision through an exercise of reason. Although the court did not elaborate on its ruling, it did indicate that it had considered the statutes that address the issue of transporting and deposing prisoners.

## IV.

### EXCLUDING EXPERT TESTIMONY

█ The court ruled that the Reeds' expert, Wally Baker, could not offer his opinion that Foster specifically would have exhibited signs of obvious intoxication while in the Bar. Although the court did not permit Baker to offer this opinion, it did allow Baker to testify to the visible signs of intoxication that a person with a BAC of .25 would ordinarily exhibit. We review decisions admitting or excluding evidence, including the testimony of expert witnesses, for an abuse of discretion. *Burgess,* 127 Idaho at 574, 903 P.2d at 739 (citing *Hopkins v. Duo–Fast Corp.,* 123 Idaho 205, 210, 846 P.2d 207, 212 (1993)); *Egbert v. Idaho State Ins. Fund,* 125 Idaho 678, 680–81, 873 P.2d 1332, 1334–35 (1994); *State v. Winn,* 121 Idaho 850, 855, 828 P.2d 879, 884 (1992) (citing *State v. Crea,* 119 Idaho 352, 806 P.2d 445 (1991); *Sidwell v. William Prym, Inc.,* 112 Idaho 76, 730 P.2d 996 (1986)).

Idaho's dram shop/social host liability statute creates a cause of action against sellers of alcohol in three specific situations, only one of which applies here:

A person who has suffered injury, death or any other damage caused by an intoxicated person, may bring a claim or cause of action against any person who sold or otherwise furnished alcoholic beverages to the intoxicated person, only if:

\*　　\*　　\*　　\*　　\*　　\*

(b) The intoxicated person was *obviously intoxicated* at the time the alcoholic beverages were sold or furnished, *and the person who sold or furnished the alcoholic beverages knew or ought reasonably to have known that the intoxicated person was obviously intoxicated.*

I.C. § 23–808(3) (emphasis added). Thus, whether Foster was obviously intoxicated between 5:00 and 6:00 p.m. while in the Bar and whether the Bar's employees knew or reasonably should have known that Foster was obviously intoxicated are central elements of the Reeds' case and are questions to be resolved by the trier of fact. In a ruling not appealed by either party, the court adopted for purposes of § 23–808 California's test for "obvious intoxication": red, bloodshot eyes; alcohol odor on breath; incontinence; slurred speech; inability to stand; spilling things; knocking over objects; and/or loud, obnoxious behavior. *See, e.g., Schaffield v. Abboud,* 15 Cal.App.4th 1133, 1139–40, 19 Cal.Rptr.2d 205, 209–10 (1993).

The court's main rationale for refusing to admit Baker's opinion was that it lacked an adequate foundation. I.R.E. 703 provides that an expert may only base an opinion on facts or data which are not admissible in evidence "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." In forming his opinion, Baker relied upon police reports of two prior DUI arrests involving Foster which contained his BAC at the time of arrest and his performance on field sobriety tests at those BAC levels. The arrest report from April 20, 1993, revealed that Foster failed the field sobriety tests with a BAC of .15/.13 which, according to Baker, indicated that Foster was exhibiting physical signs of intoxication. The arrest report from April 1, 1993, stated that Foster failed field sobriety tests at a BAC of .23/.22 and showed more pronounced visible signs of intoxication, including an inability to stand on one foot. These test results indicate, Baker asserted, that Foster demonstrates increasingly visible symptoms of intoxication as his BAC increases. Thus, in Baker's opinion, Foster, with a BAC of .25 at 7:00 p.m., would have shown

signs of obvious intoxication between 5:00 and 6:00 p.m. on June 1, 1993.

In deciding whether to admit or exclude Baker's proffered testimony, the lower court considered the foundation underlying his opinion. The court stated, in its discussion of Bartlett's motion in limine:

> I'm having grave problems understanding how you can relate two prior BAC's and this doctor, this follow [sic], Baker, was not involved in those BAC's, and he doesn't know anything about the circumstances other than what was in the arrest reports.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> How do we get the reliability of these prior episodes? How do you get the reliability of whether the BAC's were on the way up or on the way down? How do we know what the fellow's physical condition was? Are there any defenses to the BAC? Had he been smoking? Were the tests administered correctly? ...

The court's stance, then, was that Baker could not reasonably rely on field sobriety test results from prior DUI arrests to establish that Foster specifically would have shown signs of obvious intoxication in the hours preceding the accident on June 1, 1993. Not only was a lack of reliability a factor in the court's decision, but also assertions by counsel that the experts agreed that "habituated" drinkers might be asymptomatic and might not exhibit signs of obvious intoxication at elevated BACs. The Reeds planned to offer Baker's opinion that Foster would have shown signs of obvious intoxication between 5:00 and 6:00 p.m. to rebut the anticipated testimony of Bartlett's expert, Dr. Sanford, that Foster *could* have been an habituated drinker who would have been asymptomatic at elevated BAC levels.

We faced a similar situation in *Egbert v. Idaho State Insurance Fund*, 125 Idaho 678, 873 P.2d 1332 (1994), where we upheld the district court's exclusion of the expert testimony of a State Insurance Fund's (SIF) claims supervisor regarding her estimate of SIF's future medical and disability payments to claimant. Although the witness was an expert in the examination of worker's compensation claims and properly relied upon medical reports and evaluations in forming her opinion, she had assumed for the purposes of her calculations that the claimant was totally disabled. *Id.* at 680, 873 P.2d at 1334. Whether the claimant was totally disabled, however, was disputed at trial and, according to this Court, could only be established by testimony from a medical expert, which the claims supervisor was not. *Id.*, 873 P.2d at 1334. She thus could not offer her estimate of SIF's future payments to claimant because that opinion lacked proper foundation. *Id.* at 681, 873 P.2d at 1335.

Likewise, in this case, Baker lacked critical information necessary to provide a sufficient foundation for his opinion. Without more data concerning the circumstances surrounding Foster's previous DUI arrests, Baker could not adequately link Foster's physical manifestations and associated BACs during the prior arrests to his demeanor and behavior between 5:00 and 6:00 p.m. on June 1, 1993, the day of the accident. In addition, Baker did not observe or research Foster's drinking habits, nor did he refer to any records regarding Foster's habituation to alcohol. Without such information, Baker lacked sufficient foundation to render an opinion that Foster *was not* (as opposed to "might not have been") asymptomatic at elevated BAC levels and that he *would have* exhibited symptoms of obvious intoxication between 5:00 and 6:00 p.m. on the day of the accident.

## V.

## CONCLUSION

We hold that the lower court did not abuse its discretion in denying the Reeds' motion to transport Foster for purposes of testifying at the trial and that the court did not err in excluding the opinion of the Reeds' expert that Foster specifically would have exhibited symptoms of obvious intoxication between 5:00 p.m. and 6:00 p.m. while in the Bar. Costs on appeal to respondent.

JOHNSON, McDEVITT and SILAK, JJ., and GUTIERREZ, J. Pro Tem., concur.