**David DUDLEY, Plaintiff,**

v.

**HANNAFORD BROS. CO., Defendant.**

**No. 01–CV–41–B–S.**

United States District Court,
D. Maine.

March 14, 2002.

---

Lawrence C. Winger, Esq., Attorney at Law, Portland, ME, for Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SINGAL, District Judge.

Employees of a Shop 'n Save supermarket operated by Defendant Hannaford Bros. refused to sell alcohol to Plaintiff David Dudley, who suffers from a handicap that gives him the outward appearance of being intoxicated. Dudley sued Hannaford Bros. for violation of the Americans With Disabilities Act and the Maine Human Rights Act. After a non-jury trial, the parties submitted post-trial briefs (Docket # 36, 38) and proposed findings of fact and conclusions of law (Docket # 37, 39). Pursuant to Rule 52(a), the Court makes the following Findings of Fact and Conclusions of Law. Fed.R.Civ.P. 52(a).

## I. FINDINGS OF FACT

### A. Overview

On February 27, 1999, David Dudley stopped at Hannaford Bros.' Shop 'n Save supermarket in Gardiner, Maine, to purchase some alcoholic beverages. When Dudley, who walks with a pronounced limp and slurs his speech, attempted to pay for the wine coolers he had selected, the store cashier refused the sale because she believed Dudley was intoxicated. Although Dudley protested that he was disabled and not drunk, store employees explained that once the decision not to sell to him had been made, the store policy was not to reconsider the decision. Dudley filed the instant lawsuit to protest their policy.

### B. David Dudley's Incapacities

In January 1993, Dudley suffered brain damage in an auto accident that left him

Peter M. Rice, Esq., Tracie L. Adamson, Esq., Lipman & Katz P.A., Augusta, ME, for Plaintiffs.

with several permanent incapacities. Chief among them are a heavy and constant slurring of his speech, and muscular control problems that result in a pronounced limp. Although he can make himself understood, his speech is often garbled, slow, and complicated by his inability to take even breaths. The Court observed Dudley during his testimony and found his speech to be awkward and often very difficult to comprehend. Moreover, Dudley's gait and balance are affected by a weakness on one side resulting from the brain injury. His movements are exceedingly labored. Although he walks without assistive devices such as a walker or cane, the aid of such devices would not significantly ameliorate his condition.

## C. The Disputed Incident

On February 27, 1999, Dudley moved from Augusta, Maine, to a new apartment in Gardiner, Maine, with the assistance of several people. After completing the move, Dudley drove to the Shop 'n Save in Gardiner to purchase some alcohol. Dudley entered the store and made his way to the alcohol aisle, where he spent roughly ten to fifteen minutes pricing items. While in the aisle, he noticed that the store shift leader, Armand Cookson, was observing him from a checkout counter. Dudley finally selected a four-pack of wine coolers and walked up the aisle towards the checkout. As he approached, Cookson and cashier Erin Donnell noted his erratic gait, that his face was flushed and that his eyes were drooping. Before Dudley reached the counter, both decided independently that he was intoxicated.

When Dudley attempted to pay for the wine coolers, Donnell informed him that she could not sell them to him because she believed he was intoxicated. Dudley immediately became upset, threw his hands in the air, and exclaimed something along the lines of "Here we go again!" (*See* Trial Trans. at 125 (Docket # 34).) Donnell, taken aback, stepped away from her register, and Cookson, who was standing nearby, moved to speak with Dudley. He asked Dudley what the problem was, and Dudley explained to him in a loud and angry voice that he was disabled rather than drunk. Cookson, who at trial admitted that after hearing the explanation he believed Dudley may in fact have been disabled rather than intoxicated, nevertheless informed Dudley that once Donnell had refused to sell him alcohol, the store policy was not to reverse that decision under any circumstances.

Several minutes later, Dudley spoke with the store manager, Henry Fossett. He explained his disability to Fossett, this time more calmly, and pointed out to Fossett that he was driving a car with handicap license plates and was parked in a handicap parking spot. Fossett, like Cookson, believed that Dudley might indeed be disabled, but also suspected that Dudley was under the influence of drugs or alcohol. He explained to Dudley that he would not reverse Donnell and Cookson's position. Dudley eventually left the store.

## D. Hannaford's Alcohol Training Policies

All of the employees who work as cashiers at Hannaford Bros. stores receive special training to prevent selling alcohol to intoxicated individuals. The training program is designed and promoted by Maine law enforcement agencies. It trains cashiers to recognize telltale signs of drunkenness, and emphasizes that they should err on the side of caution by not selling alcohol to anyone who exhibits the slightest indication of intoxication. The program stresses this latter point, reminding cashiers that they may be held personally liable under state liquor laws for selling alcohol to in-

toxicated persons. The training briefly reminds trainees, however, that disabilities may mimic signs of intoxication.

At the Gardiner store it is an unwritten rule that once a cashier refuses to sell alcohol to a customer, the cashier's supervisors will rarely, if ever, reverse that decision. At trial, Cookson, the shift manager, explained that he would never sell alcohol to an individual who had already been denied by a cashier, nor would he direct the cashier to do so. The store manager, Fossett, explained that once the customer had been declined, he would always back up his cashier by refusing to sell the customer alcohol, notwithstanding any subsequent evidence that the customer was disabled. Only in the "very, very unique" case in which a customer had alerted him to an intoxication-mimicking disability *before* attempting to purchase alcohol would Fossett reverse a cashier's decision. (*See* Trial Trans. at 106–08 (Docket # 34).)

## II. DISCUSSION

Plaintiff filed suit in this Court alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. (the "ADA" or the "Act"), and the Maine Human Rights Act, 5 M.R.S.A. § 4551 et seq. (the "MHRA"). Courts have interpreted the ADA and MHRA statutes as coextensive. *See, e.g., Soileau v. Guilford of Maine, Inc.,* 928 F.Supp. 37, 45 (D.Me.1996); *Caldwell v. Fed. Express Corp.,* 908 F.Supp. 29, 36 (D.Me.1995). Therefore, although the Court only addresses Plaintiff's claims pursuant to the ADA, its conclusions with regard to Defendant's liability apply equally to Plaintiff's MHRA claim.

 The ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). "Discrimination" includes

a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities....

*Id.* at § 12182(b)(2)(A)(ii). To recover on a claim for violation of section 12182, Plaintiff must show (1) that he is a person with a disability; (2) that Defendant is a public accommodation; (3) that he requested a reasonable modification of Defendant's policy or procedures that was necessary to allow him access to the public accommodation as described in section 12182(b)(2)(A)(ii); and (4) that Defendant denied the requested modification. *See Anderson v. Ross Stores, Inc.,* No. C 99–4056 CRB., 2000 WL 1585269 at *4 (N.D.Cal. Oct. 10, 2000). *See also, Johnson v. Gambrinus Company/Spoetzl Brewery,* 116 F.3d 1052, 1058–60 (5th Cir.1997); *Dahlberg v. Avis Rent A Car Sys., Inc.,* 92 F.Supp.2d 1091, 1100 (D.Colo.2000). There is no dispute that a supermarket is a public accommodation within the meaning of the statute. *Id.* at § 12181(7)(E).

At trial and in post-trial filings, two issues emerged concerning Defendant's liability under the ADA. First, the parties disagree whether Plaintiff has proven that he was "disabled" within the meaning of the Act. Second, they disagree whether a reasonable modification of Defendant's policies and procedures was necessary to afford him access to the public accommodation as described in the Act. *See* 42 U.S.C. § 12182(b)(2)(A)(ii).

### A. Was Plaintiff Disabled?

Defendant contends that Plaintiff failed to prove that he was "disabled" within the

meaning of the Act. A person is "disabled" under the ADA if he suffers from "a physical or mental impairment that substantially limits one or more ... major life activities." *Id.* at § 12102(2)(A). Defendant argues that because Plaintiff is capable of communicating and walking, albeit awkwardly, his limitations are not "substantial."

Whether a person is "substantially limited in a major life activity" requires a fact-specific, case-by-case inquiry. *See Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 691–92, 151 L.Ed.2d 615 (2002). In *Williams,* the Supreme Court noted that, among other things, "substantially limited" means "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity" as compared to the ability of a person in the general population to perform the same activity. *Id.* at 690 (quoting 29 C.F.R. § 1630.2(j) (2001)). "Substantial limitation" also presumes that the condition is permanent or long term. *Id.* at 691 (citing 29 C.F.R. §§ 1630.2(j)(2)(ii)—(iii) (2001)).

Speaking and walking are major life activities. 29 C.F.R. § 1630.2(i). Although Plaintiff can communicate and ambulate, the Court finds that his limitations are substantial enough to merit the protection of the Act. For instance, it is often quite difficult to discern what Plaintiff is saying due to his difficulty enunciating and modulating his speech. His breaths come in fits, so that his speech is also somewhat halting. By the same token, although Plaintiff is capable of walking unassisted, his gait is exceedingly labored. Defendant argues, correctly, that a slight impediment, such as being able to walk but not run, does not make a person disabled within the meaning of the statute. *See Williams,* 122 S.Ct. at 691 (reasoning that "substantial" precludes impairments that interfere in a minor way with a major life activity). Plaintiff, however, is far more than slightly impeded. Compared to the walk of an average person in the general population, Plaintiff's mobility, balance and fluidity of movement are all significantly restricted. In short, Plaintiff is disabled within the meaning of the Act.

### B. Were Reasonable Modifications Necessary?

Defendant next contends that no reasonable modification of the store's policies was necessary to "afford [Plaintiff] goods, services, facilities, privileges, advantages or accommodations" that were available to the store's non-disabled customers. 42 U.S.C. § 12182(b)(2)(A)(ii). The parties' differing conceptions of what modification Plaintiff believes he was due complicates the analysis. Plaintiff argues that the Gardiner store policy of never reconsidering a cashier's refusal to sell alcohol to a customer should have been modified to allow for reconsideration. He contends that regardless of whether store employees ultimately decide to sell a disabled customer alcohol, they have a duty pursuant to the ADA to reconsider their initial refusal to do so in light of the customer's explanation of his condition. Defendant, in contrast, argues its case as if Plaintiff is insisting only that the ADA requires he be allowed to purchase alcohol because of his disability. Accordingly, Defendant argues that its employees treated Plaintiff as they would have treated any other customer, and that that is all the ADA requires. Moreover, Defendant insists that the Maine liquor laws prohibiting the sale of alcohol to visibly intoxicated individuals dictated its employees' caution in Plaintiff's case. *See* 28–A M.R.S.A. §§ 2506(2), 2507(2).

Congress enacted the ADA for the purpose of combating "stereotypic assumptions" about persons with disabilities. 42 U.S.C. § 12101(a)(7). By punishing those assumptions, Congress sought to break down "overprotective rules and policies" that limited disabled persons' access to public accommodations. *Id.* at § 12101(a)(5). To accomplish this goal, the statute mandates that storeowners make "reasonable modifications" to their policies or procedures when necessary to allow a person with a disability equal access to the public accommodation. 42 U.S.C. § 12182(b)(2)(A)(ii). A storeowner is relieved of this responsibility only if the modification fundamentally alters the nature of the public accommodation, 42 U.S.C. § 12182(b)(2)(A)(ii); *PGA Tour, Inc. v. Martin,* 532 U.S. 661, 121 S.Ct. 1879, 1893, 149 L.Ed.2d 904 (2001), or if making the modification poses a "direct threat" to the general public. *Braydon v. Abbott,* 524 U.S. 624, 648–49, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (citing 42 U.S.C. § 12182(b)(3)).

At trial, the Gardiner store employees' testimony revealed that it was store policy not to reconsider a cashier's refusal to sell alcohol to a customer showing signs of intoxication, unless the customer had alerted someone at the store to a disability that mimicked intoxication prior to attempting the purchase. There was no evidence at trial, however, that the store publicized having such a policy, and the parties agree that Plaintiff did not alert the store employees to his disability until after they refused to sell him alcohol. He did, however, request a modification of their "no-retraction" policy by asking the store employees to reconsider their decision in light of his explanation that he was disabled. This, according to Plaintiff, was the modification of store policy that he was due pursuant to the ADA.

Defendant argues that this modification would have been superfluous because the store employees insisted that they would not have changed their minds about selling Plaintiff alcohol even if they had reconsidered. In support of its position, Defendant cites *Jacques v. Clean–Up Group, Inc.,* 96 F.3d 506 (1st Cir.1996). In *Jacques,* a disabled former employee of a cleaning company sued pursuant to the ADA for the company's refusal to engage in an "interactive process" with him to find a reasonable accommodation for his disability. *Id.* at 513 (citing 29 C.F.R. § 1630(o)(3)). At trial, a jury found that the company's failure to do so did not violate the ADA because ultimately no accommodation was feasible. *Id.* at 514. The First Circuit upheld the jury's decision. *Id.*

■■■ Defendant reasons that *Jacques* relieved the store employees in this case of their duty to reconsider their decision not to sell alcohol to Plaintiff because they would not have sold to him even after having taken evidence of his disability into account. The Court does not agree. The "interactive process" discussed in *Jacques* is not, as Defendant argues, akin to the moment of reconsideration Plaintiff insists he was due under the ADA. In *Jacques,* the interactive process was merely a *means* of arriving at reasonable accommodation. Here, the reconsideration Plaintiff requested from the store employees was the *end* of the statute itself -a reasonable modification of their policy not to reconsider refusals to sell alcohol. 42 U.S.C. § 12182(b)(2)(A)(ii) (failing to make a "reasonable modification" is a violation of the statute). In other words, regardless of whether the store employees ultimately decided not to sell Plaintiff alcohol, they nevertheless had a duty to take his disability into account in arriving at their ultimate decision not to sell. The alternative

would be to give Defendant the right to exclude *all* persons with disabilities like Plaintiff's from purchasing alcohol, a result clearly contrary to the intent and the provisions of the ADA. *Id.* Defendant's policy of never reconsidering a refusal to sell alcohol to a customer in light the customer's revelation of a potentially intoxication-mimicking disability violated the Act.

■ Alternatively, Defendant insists that any modification to its policy would have been unreasonable, and therefore that the failure to provide it is excusable. First, it argues that Plaintiff "waived" any modification that he was due by acting unruly when the cashier refused to sell to him. Although Defendant cites no authority in support of this proposition, the Court interprets it as a variation on the principle that an entity is absolved of the duty to accommodate disabilities under the Act if doing so would pose a "direct threat" to the general public. 42 U.S.C. § 12182(b)(3); *see also Bragdon,* 524 U.S. at 648–49, 118 S.Ct. 2196. The Court cannot agree, however, that this was such a case. The testimony at trial revealed that after an initial outburst of frustration, Plaintiff calmed substantially. Fossett, the store manager, testified that he and Plaintiff carried on a calm and rational conversation. It would not have posed a direct threat to anyone at that time for Fossett to re-evaluate the cashier's decision in light of Plaintiff's explanation that he was disabled.

Second, Defendant argues that Maine's liquor laws that punish servers for selling alcohol to intoxicated persons rendered the modification Plaintiff requested infeasible. *See* 28–A M.R.S.A. §§ 2506(2), 2507(2). As noted above, Defendant trains its employees not to sell alcohol to a customer if the employee harbors even a kernel of suspicion that the customer is intoxicated. Defendant insists that forcing them to re-consider that decision in light of a customer's subsequent revelation of disability is simply unrealistic because distinguishing between disability and intoxication is often difficult.

Defendant's argument is not without merit. Even when a store employee takes evidence of a customer's alleged disability into account in deciding whether to sell him alcohol, the employee may be justified in denying the sale on the basis of the extreme caution mandated by the statute. That is a different issue, however, from the case in which the cashier refuses to consider evidence of the customer's disability altogether, merely because she has already told the customer that she cannot make the sale. In the former scenario, a disabled customer retains at least the minimum opportunity to convince the store employee that he is not intoxicated. In the latter he effectively has no such opportunity, and that policy violates the ADA and the MHRA.

## C. Remedies

■ Pursuant to both the ADA and MHRA, Plaintiff is therefore entitled to injunctive relief from Defendant's discriminatory policy. 42 U.S.C. § 12188(a)(1) (incorporating 42 U.S.C. § 2000a–3(a)); 5 M.R.S.A. § 4613(2)(B). Moreover, additional remedies such as civil penal damages and attorney fees are available to Plaintiff pursuant to the MHRA. 5 M.R.S.A. §§ 4613(2)(B)(7) (authorizing up to $10,000 in civil penal damages), 4614 (authorizing the prevailing party to recover attorney fees and costs). Ordinarily, to recover these additional remedies, Plaintiff must have filed a timely complaint with the Maine Human Rights Commission ("MHRC"). *See* 5 M.R.S.A. § 4622(1). Although there was no testimony on point at trial, the parties appear to agree that Plaintiff did not file a timely claim.

However, the statute contains an exception. Plaintiff may recover damages and attorney fees under the MHRA without having filed a timely complaint provided he filed a claim that did not require exhaustion of administrative remedies, such as a claim under the ADA, in conjunction with his MHRA claim. *Id.;* 42 U.S.C. § 12188(a) (incorporating *only* the procedures delineated in 42 U.S.C. § 2000a–3(a)); *see also Stan v. Wal–Mart Stores, Inc.,* 111 F.Supp.2d 119, 123 (N.D.N.Y. 2000); *Wyatt v. Liljenquist,* 96 F.Supp.2d 1062, 1064 (C.D.Cal.2000). Because he did so here, Plaintiff is therefore entitled not only to injunctive relief under the ADA and MHRA, but also to civil penal damages, attorney fees and costs pursuant to the MHRA. *See, e.g., U.S. v. York Obstetrics & Gynecology, P.A.,* 2000 WL 1221625 at *7–8 (D.Me. Aug. 25, 2000) (citing *Johnson,* 116 F.3d at 1059).

## III. CONCLUSIONS OF LAW

1. Plaintiff is disabled within the meaning of the ADA, 42 U.S.C. § 12102(2)(A), and MHRA, 5 M.R.S.A. § 4553.

2. Defendant violated Plaintiff's rights pursuant to the ADA, 42 U.S.C. § 12182(b)(2)(A)(ii), and MHRA, 5 M.R.S.A. § 4591, by failing to make reasonable modifications to its policy of not reconsidering a cashier's refusal to sell alcohol to a customer she believes is intoxicated. Specifically, Defendant's employees violated the acts by refusing to reconsider their decision not to sell Plaintiff alcohol once Plaintiff revealed his intoxication-mimicking disability to them.

3. Plaintiff is entitled to injunctive relief, civil penal damages, attorney fees and costs as a result of these violations. 42 U.S.C. § 12188(a)(1); 5 M.R.S.A. §§ 4613(2)(B), 4614.

## IV. ORDER

Pursuant to the above Findings of Fact and Conclusions of Law, the Court finds Defendant LIABLE to Plaintiff and ORDERS Defendant to cease and desist from engaging in a policy of refusing to reconsider a store employee's refusal to sell alcohol to a customer when the customer subsequently reveals to the employee that he is disabled. The Court further ORDERS Defendant to pay Plaintiff $5,000.00 in civil penal damages, and that upon Plaintiff's motion, to be filed within thirty days, Defendant shall pay Plaintiff's reasonable attorney fees and costs.

SO ORDERED.