2002 ME 79

**Brian BEAULIEU et al.**

v.

**THE AUBE CORPORATION.**[1]

Supreme Judicial Court of Maine.

Argued: April 4, 2002.

Decided: May 15, 2002.

---

**12.** *See supra* footnote 6.

**1.** Roy Crabtree, although a defendant in the Superior Court, is not a party to this appeal.

James J. MacAdam, Esq, (orally), Mac-Adam McCann, Portland, for plaintiffs.

Thomas S. Majerison, Esq. (orally), Norman, Hanson & DeToy, LLC, Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

ALEXANDER, J.

[¶ 1] Natalie Farrin and Brian Beaulieu appeal from two summary judgments entered in the Superior Court (Cumberland County, *Delahanty, J.* and *Humphrey, J.*), determining that (1) Farrin's untimely notice of claim to defendant Aube Corporation doing business as The Cascade Inn (Cascade Inn) was without good cause pursuant to the Maine Liquor Liability Act, 28–A M.R.S.A. § 2513 (1988), and (2) Beaulieu failed to establish a prima facie case that the Cascade Inn negligently served Roy Crabtree liquor in violation of the Maine Liquor Liability Act, 28–A M.R.S.A. § 2506 (1988). Farrin and Beaulieu argue that the Superior Court erred in (1) determining that Farrin did not have good cause for her untimely filing, and (2) excluding Beaulieu's expert's opinion and granting judgment to the Cascade Inn. We affirm the judgments.

## I. CASE HISTORY

[¶ 2] The following case history is taken from the statements of material fact and supporting documents filed by the parties. *See* M.R. Civ. P. 56(h). Where ambiguities exist, they are resolved in favor of the non-prevailing party on summary judgment. *Green v. Cessna Aircraft Co.*, 673 A.2d 216, 218 (Me.1996).

[¶ 3] On July 21, 1997, at approximately 7:45 p.m., Roy Crabtree left his home to go to the Cascade Inn in Saco for dinner. He was seated for his meal at 8:10 p.m., staying for around one hour and leaving the

restaurant at approximately 9:00 p.m. That evening, Natalie Farrin was the passenger on a motorcycle operated by Brian Beaulieu. The two were travelling south on Route 1 when a vehicle operated by Crabtree struck the motorcycle as the vehicle was driven from the Cascade Inn driveway.

[¶ 4] A witness, Andrew Sparda, heard a "quick screech and then a bang," looked toward the accident, and saw Farrin and Beaulieu "go up in the air rather high" and then land. Sparda ran to the scene and found both persons on the ground. Farrin was unresponsive. Beaulieu was conscious and speaking.

[¶ 5] Sparda observed Crabtree get out of his vehicle and mumble something. Crabtree later claimed that he was speaking to the victims. The area was well lit by street lights and, at this point, Crabtree was approximately five feet from Sparda. According to Sparda, Crabtree exhibited signs of intoxication, including bleary, bloodshot eyes, a disheveled appearance, and slurred words. Sparda stated that Crabtree "just wasn't moving with any grace."

[¶ 6] After Sparda and Crabtree stared at each other for about five seconds, Crabtree got back in his vehicle and placed it in reverse, nearly running over Natalie Farrin's head, located just behind the rear wheel of Crabtree's vehicle. When Sparda looked up again, the vehicle was present but Crabtree was gone.

[¶ 7] Roy Crabtree did not return home, but instead walked around all night. The following morning, July 22, Crabtree reported to the Saco Police Department to turn himself in. A month later he admit-

ted to a private investigator hired by Brian Beaulieu that he was served and drank a glass of wine while at the Cascade Inn.

[¶ 8] Farrin retained an attorney in early August 1997 to represent her in her claim regarding the injuries she sustained as a result of the collision with Crabtree's vehicle. That attorney's investigation of the collision consisted of obtaining police reports and statements of witnesses who were at the scene of the collision, none of which indicated that Crabtree drank alcohol at the Cascade Inn prior to the accident.[2] Farrin and her attorney decided to rely upon the work of the investigator hired by Beaulieu's attorney rather than incur investigation costs. At some point, this decision was communicated to Beaulieu's attorney, who agreed to share any information uncovered by his investigator.[3]

[¶ 9] Farrin's attorney did not learn that Crabtree had consumed alcohol at the Cascade Inn until she spoke with Beaulieu's attorney in early July 1999. At that time, she also learned that Andrew Sparda had given a statement that Crabtree appeared intoxicated at the scene of the collision. Farrin's attorney then prepared a notice of claim pursuant to the Maine Liquor Liability Act, which the Cascade Inn received on July 19, 1999. The Cascade Inn had received Beaulieu's notice of claim on November 10, 1997. Beaulieu's notice of claim included the allegation that the Cascade Inn had negligently served Crabtree alcohol on July 21, 1997, when he was "visibly impaired" and that such impairment contributed to the collision. *See* 28-A M.R.S.A. § 2506(2).

---

2. The information later provided by Sparda was not with these materials.

3. Based on comments by Beaulieu's attorney at oral argument, the information-sharing dis-

cussion may not have occurred until sometime in 1999. Farrin's initial attorney has withdrawn, and both Farrin and Beaulieu are now represented by the same attorney.

[¶ 10] Beaulieu and Farrin filed separate complaints against the Aube Corporation doing business as The Cascade Inn Restaurant in July 1999. The complaints alleged that the Cascade Inn negligently served Roy Crabtree liquor in violation of the Maine Liquor Liability Act (MLLA), 28–A M.R.S.A. §§ 2501–2520 (1988 & Supp.2001). The two complaints, including Beaulieu's negligence claim against Crabtree, were consolidated on October 19, 2000.

[¶ 11] On January 3, 2001, the Superior Court (*Delahanty, J.*) granted the Cascade Inn's motion for summary judgment with respect to Farrin.[4] The court determined that Farrin failed to establish good cause for filing a late notice of claim and that the notice was not made timely "merely because prejudice to the defendant [was] lessened when notice of the accident and personal injury claims was provided earlier by Beaulieu."

[¶ 12] On September 25, 2001, the Superior Court (*Humphrey, J.*) granted the Cascade Inn's motion for summary judgment with respect to Brian Beaulieu, finding that Beaulieu failed to establish a prima facie case for negligent service of liquor under the MLLA. Specifically, the court determined that Beaulieu's expert, Dr. Harvey Cohen, did not have a sufficient basis for expressing his opinion regarding Roy Crabtree's blood alcohol level or state of intoxication while at the Cascade Inn. The court concluded that Beaulieu failed to set forth a prima facie case establishing liability under the MLLA because "there is no [other] evidence of Crabtree's state of intoxication at the time he was served at the Cascade Inn."

[¶ 13] Beaulieu and Farrin's notice of appeal was filed on October 16, 2001. At that time, Beaulieu's negligence claim against Crabtree was still pending. In January 2002, upon Beaulieu and Farrin's motion, the Superior Court directed the entry of partial final judgment pursuant to M.R. Civ. P. 54(b).

## II. DISCUSSION

[¶ 14] The entry of a summary judgment is reviewed for errors of law. *Coulombe v. Salvation Army,* 2002 ME 25, ¶ 8, 790 A.2d 593, 595. On review, we consider only the portions of the record referred to, and the material facts set forth in the parties' M.R. Civ. P. 56(h) statements. *Stewart v. Aldrich,* 2002 ME 16, ¶ 8, 788 A.2d 603, 606. A trial court properly grants summary judgment for the movant if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Stanton v. University of Maine Sys.,* 2001 ME 96, ¶ 6, 773 A.2d 1045, 1048. To avoid judgment as a matter of law in the defendant's favor, the plaintiff must establish a prima facie case for each element of the cause of action. *Id.* ¶ 6, 773 A.2d at 1049. Any findings for the plaintiff may not be based upon conjecture or speculation. *Id.*

### A. Farrin's Notice of Claim

[¶ 15] The Maine Liquor Liability Act governs actions when a plaintiff alleges that the defendant negligently served alcoholic beverages to a visibly intoxicated individual, and that person's consumption of liquor proximately caused the subsequent injury for which the plaintiff seeks damages.[5] 28–A M.R.S.A. §§ 2504, 2506. As

---

4. Although captioned "Decision and Order on Motion to Dismiss," it appears the Superior Court was actually acting on the Cascade Inn's motion for summary judgment as no motion to dismiss was pending.

5. While the MLLA prohibits the intoxicated individual from pursuing a cause of action for

a precursor to pursuing a claim under this Act, a plaintiff "must give written notice to all defendants within 180 days of the date of the server's conduct creating liability." 28–A M.R.S.A. § 2513.[6] A plaintiff may avoid dismissal for failure to file a timely notice of claim if she "shows good cause why notice could not have reasonably been filed within the 180–day limit." *Id.*

[¶ 16] It is undisputed that Natalie Farrin failed to provide the Cascade Inn the requisite notice within the 180–day limit. She contends, however, that she had good cause for the eighteen-month delay in filing because (1) neither she nor her attorney had any knowledge that Crabtree was possibly intoxicated or that he was served alcohol by the Cascade Inn, and (2) the Cascade Inn was notified in a timely manner of Brian Beaulieu's possible claim for negligent service of alcohol.

[¶ 17] We have never defined the term "good cause" as used in the MLLA. In construing a statute, "we first look to the plain meaning of the language to determine legislative intent." *Brent Leasing Co., Inc. v. State Tax Assessor,* 2001 ME 90, ¶ 6, 773 A.2d 457, 459. "[T]he term must be given a meaning consistent with the overall statutory context and must be construed in the light of the subject matter, the purpose of the statute and the consequences of particular interpretation." *Id.* (quoting *Reagan v. Racal Mortgage, Inc.,* 1998 ME 188, ¶ 8, 715 A.2d 925, 928).

[¶ 18] The legislative history of the MLLA indicates that the 180–day notice period was modeled after the Maine Tort Claims Act (MTCA), 14 M.R.S.A. § 8107.[7] Report of a Study by the Joint Standing Committee on Legal Affairs on the Dram Shop Act and Liquor Liability Law in Maine, 15–16 (Feb. 1986); *see also* L.D. 2080, Statement of Fact (112th Legis.1986) (noting that the MLLA was "the result of a comprehensive study on the dram shop law conducted by the Joint Standing Com-

---

negligent service of liquor, if he is at least 18 years old, any person who suffers damage as a result of the reckless service of liquor may bring a claim. 28–A M.R.S.A. § 2504(2). *See also Thibodeau v. Slaney,* 2000 ME 116, ¶ 10 n. 6, 755 A.2d 1051, 1054.

**6.** Section 2513 provides, in its entirety:

Every plaintiff seeking damages under this Act must give written notice to all defendants within 180 days of the date of the server's conduct creating liability under this Act. The notice must specify the time, place and circumstances of the server's conduct creating liability under this Act and the time, place and circumstances of any resulting damages. No error or omission in the notice voids the effect of the notice, if otherwise valid, unless the error or omission is substantially material. Failure to give written notice within the time specified is grounds for dismissal of a claim, unless the plaintiff provides written notice within the limits of section 2514 [statute of limitations] and shows good cause why notice could not have reasonably been filed within the 180–day limit.

**7.** 14 M.R.S.A. § 8107(1) (Supp.2001) provides:

**1. Notice requirements for filing.** Within 180 days after any claim or cause of action permitted by this chapter accrues, or at a later time within the limits of section 8110, when a claimant shows good cause why notice could not have reasonably been filed within the 180–day limit, a claimant or a claimant's personal representative or attorney shall file a written notice containing:

**A.** The name and address of the claimant, and the name and address of the claimant's attorney or other representative, if any;

**B.** A concise statement of the basis of the claim, including the date, time, place and circumstances of the act, omission or occurrence complained of;

**C.** The name and address of any governmental employee involved, if known;

**D.** A concise statement of the nature and extent of the injury claimed to have been suffered; and

**E.** A statement of the amount of monetary damages claimed.

mittee on Legal Affairs" and that the committee report "includes an in-depth explanation of each section"). The connection to the MTCA notice extension provision is explicitly stated: "Also borrowed from that section [of the MTCA] is the extension of the notice period if the plaintiff can demonstrate why notice could not have reasonably been given within the 180 days." Joint Standing Committee Report at 16.

[¶ 19] We have interpreted the MTCA good cause exception narrowly because, similar to the MLLA,[8] the MTCA is a statute in derogation of the common law. *See Peters v. City of Westbrook,* 2001 ME 179, ¶ 6, 787 A.2d 141, 143 (noting that the MTCA is a " 'limited relaxation' of common-law sovereign immunity"); *Ziegler v. American Maize–Prods. Co.,* 658 A.2d 219, 222 (Me.1995) (statutes in derogation of common law must be strictly construed).

[¶ 20] In light of our narrow interpretation of the MTCA good cause exception prior to the enactment of the MLLA, we infer that the legislature intended a similar, narrow construction of the MLLA provision. *See, e.g., Faucher v. City of*

*Auburn,* 465 A.2d 1120, 1124 (Me.1983) (minority of the plaintiff, standing alone, does not amount to good cause); *Erickson v. State,* 444 A.2d 345, 350 (Me.1982) (good cause requires a plaintiff to be physically unable to file the notice of claim).

[¶ 21] Farrin asserts different legislative purposes of the statutes and urges us to adopt a more liberal construction of the MLLA notice provision than the narrow construction of its MTCA counterpart. Although the two Acts do have dissimilar overall purposes,[9] the MTCA and MLLA notice provisions serve nearly identical purposes. First, the provisions enable potential defendants to investigate claims and preserve evidence. *See Pepperman v. Barrett,* 661 A.2d 1124, 1126 (Me.1995); *Peters v. Saft,* 597 A.2d 50, 54–55 (Me. 1991). Second, the provisions encourage prompt settlement of valid claims. *Pepperman,* 661 A.2d at 1126; *Peters,* 597 A.2d at 55. We therefore look to cases applying the MTCA notice provisions in construing the MLLA and determining whether Farrin had good cause for her untimely filing.

[¶ 22] Good cause requires a showing that "the plaintiff was unable to file a

---

8. At common law, persons injured by the consumer of alcohol could not maintain suit against the provider of alcohol under the rationale that the consumption, rather than the provision, of alcohol was the proximate cause of the injuries, *Peters v. Saft,* 597 A.2d 50, 55 (Me.1991) (Glassman, J., concurring); *see also Currier v. McKee,* 99 Me. 364, 366, 59 A. 442, 443 (1904) (noting that the Dram Shop Act created a new cause of action, unknown to the common law); *Gardner v. Day,* 95 Me. 558, 560, 50 A. 892, 893 (1901) (same). *But cf. Klingerman v. SOL Corp.,* 505 A.2d 474, 477 (Me.1986) (holding the Dram Shop Act did not bar an action at common law for tortious sale of alcohol beverages).

9. The central purpose of the MTCA was to restore the common law sovereign immunity that had been abrogated by this Court in *Davies v. City of Bath,* 364 A.2d 1269 (Me.

1976). *See* L.D. 162, Emergency Preamble (108th Legis.1977).

The primary legislative purpose of the MLLA is to "prevent intoxication-related injuries, deaths and other damages among the State's population." 28–A M.R.S.A. § 2502(1). The secondary legislative purposes are to:

A. Establish a legal basis for obtaining compensation for those suffering damages as a result of intoxication-related incidents in accordance with [the MLLA];

B. Allocate the liability for payment of damages fairly among those responsible for the damages, which will encourage liquor liability insurance availability; and

C. Encourage all servers of alcohol to exercise responsible serving practices.

*Id.* § 2502(2).

claim or was meaningfully prevented from learning of the information forming the basis for his or her complaint." *Peters v. City of Westbrook*, 2001 ME 179, ¶ 6, 787 A.2d at 143 (quoting *Beaucage v. City of Rockland*, 2000 ME 184, ¶ 6, 760 A.2d 1054, 1056). Farrin's contention that her lack of knowledge of the facts forming the basis of her claim amounts to good cause is identical to the plaintiff's argument in *Peters v. City of Westbrook*. Peters contended that she had good cause for her failure to provide the City with a timely notice of her wrongful death claim because she was unaware that the defibrillator used to attempt to revive her husband malfunctioned or was used improperly. *Id.* ¶ 8. Although witnesses of the incident as well as the plaintiff's friends knew of the defibrillator problems, they did not relay the information because they assumed that Peters already knew. *Id.*

[¶ 23] Reiterating our previous position that good cause may be established "[o]nly when a plaintiff is truly *prevented* from obtaining the information," we held that Peters failed to establish good cause for her untimely filing. *Id.* ¶ 8, 787 A.2d at 144. We noted that "[t]he fact that witnesses do not voluntarily come forward does not constitute good cause. . . . [P]laintiffs are expected to endeavor to obtain information on their own if help is not forthcoming." *Id.* ¶ 8, 787 A.2d at 143–44 (internal citations and quotation marks omitted).

[¶ 24] As with the plaintiff in *Peters*, Natalie Farrin has failed to establish good cause for her failure to timely file the notice of claim. Farrin's lack of knowledge that Crabtree was possibly intoxicated or that he was served alcohol by the Cascade Inn and the lack of a full investigation conducted by Farrin do not constitute good cause. *See id.* This is particularly true considering that the accident occurred as Crabtree's vehicle pulled out of a restaurant parking lot and Crabtree then disappeared, which should have put Farrin on notice to at least investigate whether alcohol may have been involved. Because Farrin was not prevented from learning that the Cascade Inn served Crabtree alcohol or that Crabtree appeared intoxicated immediately after the collision, she may not avoid dismissal of her action for failure to file a timely notice of claim.

[¶ 25] In the alternative, Farrin relies upon Brian Beaulieu's timely filing and asserts that, by analogy, she substantially complied with the notice provision because the Cascade Inn was supplied all the necessary information in a timely fashion. The MLLA specifies that *"[e]very plaintiff . . . must give written notice."* 28–A M.R.S.A. § 2513 (emphasis added). While the MLLA does provide that "[n]o error or omission in the notice voids the effect of the notice, if otherwise valid, unless the error or omission is substantially material," *id.*, this language addresses the substantive, not procedural, deficiencies of a notice.[10] Natalie Farrin may not assert Brian Beaulieu's timely filing as her own.

10. The substantial compliance exception is similar in substance to the MTCA, which provides in relevant part:

> No claim or action shall be commenced against a governmental entity or employee in the Superior Court unless the foregoing notice provisions are substantially complied with. A claim filed under this section shall not be held invalid or insufficient by reason of an inaccuracy in stating the time, place, nature or cause of the claim, or otherwise, unless it is shown that the governmental entity was in fact prejudiced thereby.

14 M.R.S.A. § 8107(4) (1980). The MTCA substantial compliance exception has been held inapplicable when the plaintiff failed to first satisfy the 180–day limitation. *Erickson*, 444 A.2d at 350.

### B. Evidence of Crabtree's Visible Intoxication

[¶ 26] Pursuant to the MLLA, a "server who negligently serves liquor to a visibly intoxicated individual is liable for damages proximately caused by that individual's consumption of the liquor." *Id.* § 2506(2). To set forth a prima facie case for negligent service of liquor, a plaintiff must establish: (1) the defendant server [11] provided liquor to an intoxicated individual [12] by sale, gift, or any other means of furnishing liquor; (2) at the time of service, the individual was visibly intoxicated; [13] (3) the server actually knew or a "reasonable and prudent person in similar circumstances would know" that the person served was visibly intoxicated; and (4) the plaintiff's injuries were proximately caused by the negligent service of liquor to the intoxicated individual. *Id.* §§ 2503, 2506.

[¶ 27] As the MLLA indicates, the proper inquiry is whether, *at the time of service of alcohol,* the person was visibly intoxicated. We agree with the Massachusetts Supreme Judicial Court that "[e]vidence of apparent intoxication, or of elevated blood levels, at some later point in time does not, by itself, suffice to show that the [person's] intoxication was evident at the time the last drink was served." *Douillard v. LMR, Inc.,* 433 Mass. 162, 740 N.E.2d 618, 621 (2001). While evidence of a person's later intoxication may be relevant to whether the person was visibly intoxicated when served, there necessarily must be some factual link between the two points in time.

[¶ 28] There is no direct evidence of Crabtree's condition when he was served the glass of wine at the Cascade Inn. There is also no evidence establishing that Crabtree consumed any alcohol prior to his arrival at the Cascade Inn. Beaulieu relies upon Andrew Sparda's observations at the accident scene and Dr. Cohen's opinions based upon Sparda's observations to provide the necessary factual foundation. Even taking Sparda's testimony in the light most favorable to Beaulieu, however, a determination based on that testimony that Crabtree was visibly intoxicated at the time he was served the glass of wine would require a jury to speculate.

[¶ 29] The contact at the accident scene between Sparda and Crabtree was brief. There is no evidence to link Crabtree's post-collision appearance and behavior to intoxication before he was served the wine or to Crabtree's conduct and appearance at the time of service. Other explanations for Crabtree's conduct after the collision, such as a collision-caused head injury or physical disability, are as consistent with the facts in evidence and also suggest nothing about Crabtree's appearance when he was served. *See, e.g., Dudley v. Hannaford Bros. Co.,* 190 F.Supp.2d 69, 71–72 (D.Me.2002) (plaintiff's physical disability mimicked intoxication); *see also Green,* 673 A.2d at 219 (holding summary judgment appropriate when the facts in evidence supported another plausible theory, not the plaintiff's theory of the case).

[¶ 30] Furthermore, because the specific time of events preceding the accident is

---

**11.** " 'Server' means a person who sells, gives or otherwise provides liquor to an individual." 28–A M.R.S.A. § 2503(5).

**12.** An intoxicated individual is one who is in a "state of intoxication." 28–A M.R.S.A. § 2503(1). " 'Intoxication' means a substantial impairment of an individual's mental or physical faculties as a result of drug or liquor use." *Id.* § 2503(2).

**13.** " 'Visibly intoxicated' means a state of intoxication accompanied by a perceptible act, a series of acts or the appearance of an individual which clearly demonstrates a state of intoxication." 28–A M.R.S.A. § 2503(7).

unclear, an hour and a half or more may have lapsed between the service of wine and Sparda's observations. The parties' statements of material fact do not reveal whether Crabtree was served wine before or after he was seated for dinner at 8:10 p.m. Additionally, although the evidence indicates that Crabtree left the restaurant at 9:00 p.m., there is no evidence indicating precisely when he drove his car from the parking lot or when the accident occurred.[14] In light of the potential gap between Sparda's observations and the service of wine, a link between the two points in time is tenuous at best and therefore cannot provide the foundation for a conclusion that Crabtree exhibited visible signs of intoxication when he was served.

[¶ 31] When there is so little evidence tending to show a critical element of a plaintiff's claim that the jury would have to speculate in order to return a verdict for the plaintiff, a defendant is entitled to a summary judgment. See Houde v. Millett, 2001 ME 183, ¶ 11, 787 A.2d 757, 759; Merriam v. Wanger, 2000 ME 159, ¶ 10, 757 A.2d 778, 781.

[¶ 32] Dr. Cohen's analysis, which relies upon Sparda's observations, cannot provide the necessary link in the evidence. Maine Rule of Evidence 705[15] permits an expert to testify in terms of an opinion or inference without first testifying to the facts underlying that opinion. M.R. Evid. 705(a). If an adverse party objects to the testimony on the ground that the expert possesses an insufficient basis for expressing an opinion, and a prima facie case is made that the expert does not have a sufficient basis for an opinion, the opinion is inadmissible unless the proponent of the testimony first establishes the underlying facts or data. M.R. Evid. 705(b).

[¶ 33] In arriving at his conclusion that Crabtree probably appeared intoxicated at the time he was served at the Cascade Inn, Dr. Cohen first estimated Roy Crabtree's blood alcohol content at the scene of the accident to be well over the legal limit, based on Andrew Sparda's observations and the totality of the circumstances. Dr. Cohen then opined that consumption of a typical four or five ounce glass of table wine, without any other consumption of alcohol, would have only a slight impairment effect on a person Crabtree's size. Based on this conclusion, Dr. Cohen determined that for Crabtree to have exhibited signs of intoxication at the time of the accident such as slurred speech and bloodshot eyes, Crabtree's blood alcohol level must have been in excess of .10% at the time he went to the Cascade Inn and,

---

14. The only evidence of the time of the accident is contained in the complaint, which alleges the time of the accident to be approximately 9:30 p.m. Even if the parties' statements of material fact cited to this allegation, which they did not, we have held previously that record references to the complaint are insufficient to defend against a motion for summary judgment. See Levine v. R.B.K. Caly Corp., 2001 ME 77, ¶ 8, 770 A.2d 653, 656.

15. M.R. Evid. 705 provides:

(a) **Disclosure of Underlying Facts.** The expert may testify in terms of opinion or inference and give reasons therefor without first testifying to the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

(b) **Objection.** An adverse party may object to the testimony of an expert on the ground that the expert does not have a sufficient basis for expressing an opinion. Counsel may before the witness gives an opinion be allowed to conduct in the absence of the jury a voir dire examination directed to the underlying facts or data on which the opinion is based. If a prima facie case is made that the expert does not have sufficient basis for the expert's opinion, the opinion is inadmissible unless the party offering the testimony first establishes the underlying facts or data.

therefore, he must have exhibited outward signs of intoxication while at the Cascade Inn.

[¶ 34] The Superior Court properly determined Dr. Cohen's opinion to be inadmissible because "there are no facts in evidence on which to apply the theory to the case at hand." *Green,* 673 A.2d at 218. First, the point of origin of Dr. Cohen's extrapolation is not based upon a known quantity. There was no evidence in the record that Crabtree consumed any alcohol other than the glass of wine at the Cascade Inn. Nor was there a blood alcohol test or even a scent of alcohol at the scene of the accident that Dr. Cohen could use as a starting point to deduce Crabtree's probable blood alcohol level and, therefore, level of impairment when served. In other cases where this type of expert extrapolation, or "relation-back" testimony, has been permitted, the intoxicated individual's blood alcohol content was known. *See, e.g., Adamy v. Ziriakus,* 92 N.Y.2d 396, 681 N.Y.S.2d 463, 704 N.E.2d 216, 218 (1998); *Bruce v. K.K.B., Inc.,* 52 S.W.3d 250, 255 (Tex.Ct.App.2001).

[¶ 35] Additionally, Dr. Cohen's extrapolation and ultimate determination that Crabtree was probably visibly intoxicated at the Cascade Inn is based upon the average person's reaction to excessive alcohol consumption. However, there is no evidence in the record concerning Crabtree's normal reaction to alcohol and, therefore, no way to compare his actions and appearance with that of a "normal" reaction to alcohol. *Cf. Douillard,* 740 N.E.2d at 621–22 (blood alcohol test results, combined with specific information concerning the intoxicated person's normal reaction to excessive alcohol consumption and expert's opinion regarding the normal reaction to excessive alcohol consumption,

was sufficient to survive summary judgment). As courts in other jurisdictions have reasoned, this link is necessary because some individuals "hold their liquor" better than others. *Id.* at 622 ("Assuming, without deciding, that the problem of individual variability in response to alcohol prevents a plaintiff from relying exclusively on expert opinion to make out a case of apparent intoxication."). *See, e.g., Reed v. Foster,* 130 Idaho 74, 936 P.2d 1316, 1320 (1997); *Purchase v. Meyer,* 108 Wash.2d 220, 737 P.2d 661, 665 & n. 12 (1987). Without that link, there is no way to apply Dr. Cohen's opinion to the facts in this case. *See Duchaine v. Fortin,* 159 Me. 313, 318, 192 A.2d 473, 476 (1963) ("When it is sought to establish a case upon inferences drawn from facts, it must be from facts proven. Inferences based on mere conjecture or probabilities will not support a verdict."); *see also Parker v. Hohman,* 250 A.2d 698, 702 (Me.1969) ("opinion may not be based upon surmise or conjecture"), *quoted in Green,* 673 A.2d at 218. The Superior Court properly excluded Dr. Cohen's opinion on the grounds that it lacked a sufficient factual basis.

[¶ 36] Because Dr. Cohen's opinion lacks a sufficient factual foundation and is therefore inadmissible, and the record is completely devoid of any other evidence establishing that Crabtree was visibly intoxicated at the time he was served the glass of wine at the Cascade Inn, the Superior Court properly granted summary judgment for the Cascade Inn.[16]

The entry is:

Judgments affirmed.

---

16. This holding does not eliminate pursuit of the action against Roy Crabtree, which is still pending in the Superior Court.