ETTA M. MARR *vs.* JOHN S. HICKS.

ELLSWORTH C. MARR *vs.* JOHN S. HICKS.

Oxford.    Opinion, September 1, 1938.

*Frank W. Bjorklund,*
*Alton C. Wheeler,* for plaintiffs.
*Frank T. Powers,*
*Robert B. Dow,* for defendant.

Sitting: Dunn, C. J., Sturgis, Barnes, Thaxter, Hudson, Manser, JJ.

Manser, J. Two cases tried together, and arising out of an automobile accident. Etta M. Marr, the plaintiff in one, was a passenger in the car driven by her husband, Ellsworth C. Marr, the plaintiff in the other suit. Mrs. Marr recovered a verdict of $1500 for pain and suffering and for loss of wages for her personal labor as an employee in a shoe shop. The latter element of damage is alleged in her declaration, and her right to recover therefor, if entitled to damages at all, is not disputed. R. S., Chap. 74, Sec. 3. The declaration in the writ of Ellsworth C. Marr alleges in two counts damages to the car owned and operated by him and loss of the services and consortium of his wife, with expenses in her behalf chargeable to him. A single verdict of $925 was rendered in his favor.

The cases come up on motions for new trials. There were no exceptions. The familiar rule by which the Court must be guided is succinctly stated in *Searles* v. *Ross*, 134 Me., 77, 181 A., 820, 821:

"In considering these motions we must view the evidence in the light most favorable to the plaintiffs. On the defendant is the burden of proving that the jury's verdicts are manifestly wrong."

The accident happened on March 15, 1937 at about 3:30 p. m. No claim is advanced by the defendant that either of the plaintiffs was guilty of contributory negligence, and the evidence would not warrant such claim. The locus of the accident was on the white cement road near the southern end of the village of Norway. There was credible evidence, from which the jury would be justified in finding that the plaintiffs and two other passengers had just started from a gasoline filling station, and their car was travelling down grade on the right-hand side of the road. The cement construction is eighteen feet wide, but the travelled portion was narrowed two feet by snowbanks on either side. The roadway was straight for a considerable distance. Weather conditions were bad. There had been a fall of about three inches of wet, damp snow, very little of which remained on the roadway itself but the pavement, according to sev-

eral witnesses, including the defendant and a state highway officer called by him, was very slippery. The defendant, driving alone in a Ford car, admitted that he knew it was a very bad place, that the road seemed narrower there than anywhere else, and he was getting into the settled part of the village. The cars were in clear view when they were 250 to 300 feet away from each other. Testimony for the plaintiffs was that the defendant's car was first seen approaching somewhat to the left of the center line, that when about 150 feet distant, the defendant started to veer to his right when the car skidded sidewise for a space of forty feet and then straightened out, but kept on approaching without diminution of speed and collided with the plaintiffs' car head on. Other testimony estimated the defendant's speed at thirty to thiry-five miles an hour. The plaintiffs' car was practically stopped at the moment of collision. There was substantial agreement from all observers including the defendant, that his car bounced back from the force of the impact a distance of six or seven feet, while the plaintiffs' car was moved but an inch or two. After the collision the defendant's car was at rest almost entirely on his left-hand side of the way.

The version of the defendant is that he was travelling very slowly, approximately twenty miles per hour, on his right-hand side of the way when a rough spot was encountered, his car began to skid, he applied the brakes "pretty hard," the wheels locked and the car, absolutely uncontrollable, slid from thirty to forty feet into the car of the plaintiffs.

It is not unusual or uncommon under certain conditions for a car to skid and, for the moment, be out of control without fault on the part of its operator. Experience teaches the proper method to promptly end such skidding, and it might well be a jury question as to whether the defendant, a driver for fifteen years, was negligent in not adopting such method, or whether there had been time and opportunity to do so.

Further, the defendant admitted that he knew the abrupt and continued application of brakes to wheels travelling over a slippery surface would accentuate the tendency to skid and prolong its performance.

The case for the plaintiffs need not rest solely on these assumptions of negligence, however. The jury had a right to conclude

that the proven physical facts led to the rational inference that undue speed was a contributing factor; that the skidding had ended, and there had been reasonable subsequent opportunity to avoid the accident.

The statutory regulation affirms the rule of the common law, and makes manifest the duty resting upon automobile operators.

"Any person driving a vehicle on a way shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing." R. S., Chap. 29, Sec. 69.

The defendant assumes that the evidence preponderates· in support of the claim that skidding of his car continued to the moment of impact, and places reliance upon the contention that the courts have absolved drivers of motor vehicles from liability when skidding was an element, upon the ground that such involuntary action was unexpected and often due to causes beyond the control of the operator.

Ofttimes the expression has been used in judicial opinions that mere skidding of a motor vehicle does not of itself prove negligence of the driver. This is but a corollary to the rule that liability can not be predicated upon the mere happening of an accident. It does not necessarily imply negligence. It may occur without fault. Such, in effect, is the holding in the cases cited by the defendant including *Linden* v. *Miller*, 177 N. W., 909 (Wis.) ; *King* v. *Wolf Grocery Co.*, 126 Me., 202, 137 A., 62; *Morin* v. *Carney*, 132 Me., 25, 165 A., 166; *Williams* v. *Holbrook*, 216 Mass., 239, 103 N. E., 633; *Osborne* v. *Charbneau*, 268 Pac., 884, 64 A. L. R., 251.

There is no dissent to such holding. It is clearly pointed out as the position of our own Court, however, in *King* v. *Grocery Co.*, supra, that the circumstances as to the conduct of the driver taken altogether must be considered; while in *Morin* v. *Carney*, supra, it is noted that:

"In the absence of anything to show the conditions which existed at the time, or of the manner in which the Carney car

was being operated, the fact of its skidding would not alone tend to prove the driver negligent."

Huddy on "Automobile Law," 9th Ed., Vol. 3–4, Sec. 68, states the rule thus:

"The mere fact of the skidding of a car is not of itself such evidence of negligence as to render the owner liable for an injury in consequence thereof, and whether the driver was negligent in his management of the machine is ordinarily a question for the jury." . . . "The skidding of an automobile may, however, clearly be the result of the driver's negligence, and where a traveler, in the exercise of reasonable care, is injured by such conduct on the part of the driver, he may ordinarily recover."

Again, in 5 Am. Jr., Automobiles, Sec. 273, we find the text:

"The inquiry in cases of skidding is as to the driver's conduct previous to such skidding. The speed of the automobile prior to the skidding and the care in handling the automobile, particularly in the application of brakes, are factors to be considered in determining whether or not there was an exercise of due care. This is particularly true where statutory provisions are involved. Extremely slippery streets require correspondingly greater care in operation."

*Ziegler* v. *Ryan*, 271 N. W., 767, a strikingly similar case to that under consideration in its factual aspects, quotes the foregoing statement with approval, and then says:

"Obviously, cases involving injury due to the skidding of an automobile are dependent upon the particular facts shown. However, the following cases each disclose a set of facts in many respects similar to those here involved, and in each instance the question of negligence of the driver was held to be a jury question: *Loftus* v. *Pelletier*, 223 Mass., 63, 111 N. E., 712; *Ortwein* v. *Droste*, 191 Ky., 17, 228 S. W., 1028; *Oakes* v. *Van Zomeren*, 255 Mich., 372, 238 N. W., 177; *Ledet* v. *Gottleber* (La. App.), 143 So., 71; *Davis* v. *Brown*, 92 Cal.

App., 20, 267 P., 754; *Barret* v. *Caddo Transfer & Warehouse Company*, 165 La., 1075, 116 So., 563, 58 A. L. R., 261.

There was no manifest error upon the question of liability in the verdicts of the jury.

The defendant in his brief further contends that the damages awarded were excessive. The motion filed in each case did not assign this as a reason for new trial. In *Reed* v. *Power Co.*, 132 Me., 476, 172 A., 823, it is said:

"Asserted grounds for a new trial which are not argued, must be treated as abandoned."

With equal force it may be said that grounds for a new trial not asserted can not be considered, but as both sides have argued the question of damages, the Court has reviewed the evidence upon this point. The verdict for Ellsworth C. Marr of $925 for damages to his car, for expenses occasioned by disability of his wife and for loss of her services appears reasonable and temperate. The verdict for Etta M. Marr of $1500 for damages for her personal injuries, including loss of wages, likewise fails to justify the Court in disturbing it. The actual physical injuries were not severe. There were multiple contusions to her arms and legs and cuts on the forehead and head, with concussion of the brain. She, however, sustained a severe nervous shock and continued to suffer from hysteria and nervous debility. Her condition at the trial eight months after the accident, after giving brief testimony, was cause for excuse from further examination. There was medical evidence that her nervous condition was likely to continue and recovery therefrom was uncertain.

*Motions overruled.*