TIMOTHY DUCHAINE, BY HIS FATHER GIRARD DUCHAINE,
AND
GIRARD DUCHAINE
*vs.*
ROBERT G. FORTIN
EUGENE G. GOUZIE

Cumberland.    Opinion, July 3, 1963.

*Alton L. Yorke,* for Plaintiffs.

*Albert E. Guy,* for Defendants.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN,
SIDDALL, MARDEN, JJ.

MARDEN, J.    On appeal from the refusal of the trial
court to direct a verdict for the defendant and subsequently
to enter, after verdict for plaintiff, judgment *n.o.v.* for the
defendant.    This is a complaint in negligence wherein

Girard Duchaine in self behalf and as father and next friend of Timothy Duchaine a minor, seeks to recover damages for injuries sustained by the minor.

The jury was competent to find as pertinent to our consideration that Timothy Duchaine, age three, lived with his parents on the second floor at 195 Brown Street, Westbrook and on the date in question was playing in the back yard of his home. Access from this yard to Brown Street was supplied by a driveway. As he played he was observed, periodically, by his mother from a kitchen window overlooking the yard, while she was engaged in her household duties. Shortly after her last observation she was informed that the child had been "hit" and he was found lying injured in Brown Street near a motionless truck owned by defendant Fortin and in the possession of defendant Gouzie.

The evidence on liability is found in the following abstracts of the record of the mother's testimony on direct examination:

"Q     And how long had he been out there?

"A     Not very long because if I remember, it wasn't a very nice day and it had just started to clear. So he hadn't been out all morning. Oh, I'd say he had been out about fifteen or twenty minutes.

"Q     And you were going about in your kitchen, and I believe you said you were making cookies?

"A     That is right.

"Q     And then in your own words * * * what you did and what you saw from then on?

"A     Well, I was taking — putting the cookies in the oven and I heard a scream and my little boy, my other little boy Michael who is only in school half a day, opened the door and said,

'Mommy, he is hit. Timmy is hit.' So I ran downstairs and went out and he was lying in the street.

"Q    And was there any vehicle around there with relation to Timmy?

"A    Fortin's green truck."

And in response to a question asking the mother to describe the area where the child was playing:

"A    Well, as I say, Mrs. Jalbert lived downstairs and her doorway was a little under mine over to the left, I'd say. And the area is quite large, and there is a fence dividing ours from the next-door neighbor's. And then you can go around the building, and it is sort of a driveway. Well, evidently the ball went down there and Timmy ran down the driveway after the ball."

The following are abstracts from cross-examination of Mrs. Duchaine:

"Q    So that from time to time would it be fair to say that you glanced out the window to see if the children were there?

"A    That is right.

"Q    You weren't watching the children?

"A    Not constantly, no.

\* \* \* \* \* \* \*

"Q    Now, you testified that the ball evidently rolled down the driveway. Did you see the ball roll out of the play area?

"A    No. Timmy didn't go out of the house with the ball. Evidently it must have been a little neighbor's ball.

"Q    Were there other children in the yard?

"A    Yes. I believe there were one or two other children.

"Q   So that it is possible then when Timmy went out, the other children were playing ball and he joined them?

"A   I assume. Yes.

"Q   As you looked out the window, did you see some of the children and Timmy playing ball?

"A   I saw Timmy. Yes. And then I went back to my work.

\* \* \* \* \* \* \*

"Q   And you didn't see the ball run down the driveway?

"A   No, I didn't.

"Q   And you didn't see Timmy run down the driveway?

"A   No.

\* \* \* \* \* \* \*

"Q   Do you know how he got to Brown Street? Do you know if he went down the driveway?

"A   Do I know?

"Q   Yes.

"A   I didn't see him. But I —

"Q   My question to you is, do you know how he got onto Brown Street?

"A   Well, he must have gone down through the driveway.

"Q   Could he have gone this way?

"A   Oh, yes, he could have.

"Q   So you don't know how he got down onto Brown Street, do you?

"A   I didn't see him, No.

"Q   And you don't know when he went down onto Brown Street, do you?

"A   What do you mean when?

"Q   Just what I say. You don't know when he went down onto Brown Street?

"A   Well, it must have been shortly after I had checked the last time.

*  *  *  *  *  *  *

"Q   (By Mr. Guy)   How did you become aware that an accident had happened?

"A   My little boy burst in the door and told me, my five-year old."

A Mrs. Jalbert who, at the time of the incident, lived on the first floor at 195 Brown Street beneath the Duchaine family, testifies that she was aware that the child was playing with other children in the backyard by her door and as bearing upon the accident testified:

"Q   (By Mr. Yorke)   What were you doing at that time, Mrs. Jalbert?

"A   Well, I was working in my kitchen and I came out.   My door was right in the yard there.   And sometime I was sitting with the kid and talking to them.   They were playing there.

"Q   And you saw them playing?

"A   Yuh.

"Q   On the tar area in back of the —

"A   Yes, in back of the — yes.

"Q   (continuing) — house?

"A   Yuh.

"Q   Then will you tell the Court and jury what next happened?   You saw them?

"A   Yes.

"Q   Then if we understand correctly, you didn't see them again?

"A   Yes.

"Q   What next did you hear or see or do?

"A   Well, I heard a little noise like a brake there — not so.   And after, just after that I hear Mrs. Duchaine came down.

"Q    You heard a noise that was like a brake?

"A    Yuh.  And she was crying.

"Q    Will you tell us, please, how long it was as time, in point of time from the time that you last saw little Timmy playing on the tar and you heard the noise of the brake?

"A    Well, I just came into my house there in the kitchen, and just after that I heard that."

The record further discloses that a member of the Westbrook Police Department came along in his cruiser car, saw a group of people standing in the Street, found a truck at the scene and the boy, Timothy, lying in the Street four or five feet distant from the front of the truck and approximately fourteen feet from the curb (unidentified) of Brown Street.  There were marks characterized by the officer as "skid" marks measuring twenty-five feet seven inches.

Neither defendant was called to testify.  Defendant Gouzie was present in the courtroom.

We have no occasion to cite authority holding that the plaintiff has the burden of proving not only some act of negligence on the part of either defendant, but that the act proved contributed in some manner to the damage for which recovery is sought.

Liability cannot be predicated upon the mere happening of an accident.  It does not necessarily imply negligence. *Marr* v. *Hicks*, 136 Me. 33, 36, 1 A. (2nd) 271.  "Mere surmise or conjecture will not warrant submission of a plaintiff's claim to a jury.  When it is sought to establish a case upon inferences drawn from facts, it must be from facts proven.  Inferences based on mere conjecture or probabilities will not support a verdict."  *Bernstein* v. *Carmichael*, 146 Me. 446, 451, 82 A. (2nd) 786; *Jordan* v. *Portland Coach Company*, 150 Me. 149, 151, 107 A. (2nd) 416.

The case is devoid of evidence upon which the jury could justify liability, and a verdict directed for the defendants was in order. In each case:

*Appeal sustained.*

*Judgment re-opened and judgment to be entered for the defendant n.o.v.*