MLR|SC#166-18
mcv

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-16-505

JOHN GRIFFIN, individually, and as )
next friend and parent of PATRICK )
GRIFFIN, a minor, )
)
and )
)
DEVDRA GRIFFIN, individually, and as )
next friend and parent of PATRICK )
GRIFFIN, a minor, )
)
     Plaintiffs )
)
    v. )
)
CHEVERUS HIGH SCHOOL OF )
PORTLAND, )
)
and )
)
SU-ANNE HAMMOND, individually )
and as next friend and parent of JAKOB )
HAMMOND, a minor, )
)
and )
)
ANDREW HAMMOND, individually, )
and as next friend and parent of JAKOB )
HAMMOND, a minor, )
)
and )
)
JOHN/JANE DOES 1-5, )
)
    Defendants. )

ORDER ON DEFENDANT
CHEVERUS HIGH SCHOOL OF
PORTLAND'S MOTION FOR
SUMMARY JUDGMENT

STATE OF MAINE
Cumberland ss Clerk's Office

FEB 05 2018 09:48AM
RECEIVED

Before the Court is Defendant Cheverus High School of Portland's ("Cheverus") motion

for summary judgment. For the following reasons, Cheverus's motion is granted in part and denied

in part.

I. Background

Plaintiffs-Bruce Merrill, Esq.
Defendant Cheverus-J. William Druary, Esq.
Defendants Hammond-Elizabeth Stouder, Esq.

This case involves a number of disputed facts; however, the following is an account of facts that are not in dispute and are material to the motion under consideration. Cheverus is a private Jesuit high school located in Portland, Maine. (Def.'s S.M.F. ¶ 1.) In May 2016, Plaintiff Patrick Griffin ("Patrick") was enrolled in the 10th grade, and Defendant Jakob Hammond ("Jakob") was enrolled in the 11th grade at Cheverus. (*Id.* ¶ 2.) Plaintiffs John and Devdra Griffin (collectively, "the Griffins") pay tuition to Cheverus for Patrick to attend school. (*Id.* ¶ 3.)

Around 4:00 p.m. on May 18, 2016, Patrick and Jakob were on Cheverus's campus watching a javelin event with Meaghan Collins ("Meaghan"), Terryn MacDonald ("Terryn"), and Matthew Thornton ("Matthew"). (*Id.* ¶¶ 4, 8.) Matthew was not a Cheverus student on that date. (*Id.* ¶ 5.) The five teenagers left the athletic field and headed toward the school, at which point Patrick and Jakob became engaged in a physical altercation. (*Id.* ¶ 12.) After Jakob let go of Patrick, Patrick stood up, his eyes rolled into the back of his head, and he fell backwards, striking his head on the ground. (*Id.* ¶¶ 15, 45.) Patrick had a grand mal seizure after hitting his head on the asphalt. (Pl.'s A.S.M.F. ¶ 99.)

Terryn and Meaghan ran to the athletic field to find the athletic trainers while Matthew called 911. (Def.'s S.M.F. ¶¶ 30-31.) The girls found a math teacher, who gave them Patrick's parents' phone number, and Terryn called Devdra Griffin to tell her about the incident. (*Id.* ¶¶ 32-34.) Mrs. Griffin did not know Terryn on May 18, 2016. (Pl.'s A.S.M.F. ¶ 89.) Terryn could not tell Mrs. Griffin to which hospital Patrick had been taken, and when Mrs. Griffin attempted to call Cheverus at 4:40 p.m., no one answered her call, despite Cheverus not closing until 5:00 p.m. (*Id.* ¶¶ 90-93.) Other than for athletics, Cheverus has no written policy in place to deal with emergency situations during the school day. (*Id.* ¶ 103.) Cheverus also has no written policy advising staff how to notify parents in the event of an injury or accident to their child. (*Id.* ¶ 104.) Further,

Cheverus does not provide after-school supervision to students present on campus who are not participating in an after-school activity. (Def.'s Reply to Pl.'s A.S.M.F. ¶ 94.)

Patrick, accompanied by one of the athletic trainers, was transported to Maine Medical Center for treatment. (Def.'s S.M.F. ¶¶ 35-36.) The trainer called Mrs. Griffin at 4:49 p.m. to notify her that Patrick had been transported to Maine Medical Center's Emergency Department. (*Id.* ¶ 37.) Patrick had a second grand mal seizure in the emergency room. (Pl.'s A.S.M.F. ¶ 97.) He remained in the hospital from May 18 until May 21, 2016. (*Id.* ¶ 100.) A CAT scan showed signs of intracranial bleeding. (*Id.* ¶ 102.)

At his deposition, Principal Mullen testified that he learned of the incident the following morning, and he met with Jakob and his parents that day to discuss what had happened. (Def.'s S.M.F. ¶¶ 56-57.) Jakob told Principal Mullen that he and Patrick had been horsing around, that Patrick was back pedaling and tripped and fell, and that he had convulsions after hitting his head. (Pl.'s A.S.M.F. ¶¶ 106-108.) Jakob did not tell Principal Mullen that Jakob had Patrick in a headlock or chokehold before he fell. (*Id.* ¶¶ 109-110.)

On May 26, 2017, John Griffin, Father Collins, and Principal Mullen met at Cheverus to discuss what the school had learned about the incident. (Def.'s S.M.F. ¶ 62.) Dr. Griffin reported that he was told a chokehold had been used and that Patrick did not appear to have attempted to break his fall. (*Id.* ¶ 64.) Principal Mullen indicated this was new information to him, and the three gentlemen agreed further investigation was needed. (*Id.* ¶¶ 64-65.) Principal Mullen instructed Assistant Principal Cilley to interview Meaghan and Terryn. (*Id.* ¶ 67.) Although Principal Mullen informed Dr. Griffin that he did not intend to interview Matthew, Plaintiffs and Matthew went to Cheverus to meet with Father Collins so that Matthew could recite his version of the events. (*Id.* ¶¶ 73-74.) By June 3, 2016, either Father Collins, Principal Mullen, or Assistant Principal Cilley

had interviewed Jakob, Meaghan, Terryn, Matthew, and the athletic trainers and other school personnel present at the scene on the date of the incident. (*Id.* ¶ 77.) Principal Mullen concluded there was no need to suspend or discipline Jakob. (*Id.* ¶ 75.)

Plaintiffs filed their Complaint on December 15, 2016, bringing counts against Cheverus for negligence, breach of implied contract, and infliction of emotional distress.

## II. Standard of Review

Summary judgment is appropriate if, based on the parties' statements of material facts and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. "A material fact is one that can affect the outcome of the case. A genuine issue of material fact exists when the factfinder must choose between competing versions of the truth." *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821 (internal citation and quotation marks omitted). When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

If the moving party's motion for summary judgment is properly supported, the burden then shifts to the non-moving party to respond with specific facts indicating a genuine issue for trial in order to avoid summary judgment. M.R. Civ. P. 56(e). When a defendant moves for summary judgment, the plaintiff must respond with evidence establishing a prima facie case. *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897. The evidence proffered by the plaintiff "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating." *Estate of Smith v. Cumberland Cnty.*, 2013 ME 13, ¶ 19, 60 A.3d 759. If a plaintiff fails to present sufficient evidence, then the defendant is entitled to a summary judgment. *Watt*, 2009 ME 47, ¶ 21, 969 A.2d 897.

III. Discussion

*A. Counts II/VIII: Negligence*

A prima facie case of negligence requires a plaintiff to establish the following elements: a duty owed, a breach of that duty, and an injury to the plaintiff that is proximately caused by a breach of that duty. *Searles v. Trs. of St. Joseph's Coll.*, 1997 ME 128, ¶¶ 5, 6, 8, 695 A.2d 1206. At the outset, the parties do not dispute that Cheverus has a special relationship with its students which gives rise to a duty to exercise reasonable care to prevent harm to students caused by third parties while in the school's care, custody, or control. However, such duty is limited by the foreseeability of harm. "'The common-law test of duty is the probability or foreseeability of injury to the plaintiff. The risk reasonably to be perceived within the range of apprehension delineates the duty to be performed and the scope thereof.'" *Fortin v. Roman Catholic Bishop of Portland*, 2005 ME 57, ¶ 75, 871 A.2d 1208 (*quoting Brewer v. Roosevelt Motor Lodge*, 295 A.2d 647, 651 (Me. 1972)).

Cheverus argues that its duty was limited by foreseeability such that it did not owe Patrick a duty to prevent harm under the circumstances in this case. Cheverus essentially frames the duty issue as follows: if Cheverus could not have reasonably foreseen that Jakob would cause physical harm to another student, Cheverus had no duty to protect against such harm. If that were indeed the proper scope of the duty owed by Cheverus, Cheverus would likely be entitled to summary judgment on the negligence claims, as the record is indeed lacking in admissible evidence that Cheverus could foresee that Jakob in particular would harm another student. However, the Court finds this scope is too narrow, as there is no reason to artificially limit the foreseeability of harm to the danger posed by this individual student.

Whether the harm inflicted upon a plaintiff was reasonably foreseeable is a fact question. *Shultz v. Gould Academy*, 332 A.2d 368, 370 (Me. 1975). In this case, that fact question has not yet been answered. Plaintiffs argue that Cheverus's lack of policy dictating how to handle after-school emergencies is evidence of foreseeability. As noted by Cheverus, this argument misses the mark in defining the scope of Cheverus's duty, as the lack of an after-school emergency policy would not provide evidence that Cheverus could reasonably foresee such emergencies occurring in the first place.[1] Plaintiff expands this argument, however, and generates a fact question by simply contending "[t]he injuries to Patrick Griffin were foreseeable because Cheverus has no policy in place as to after-school activities until the school closes at 5:00 p.m." (Pl.'s Opp'n to Def.'s Mot. Summ. J. 9.) This broader perspective is more on target, as the fact that students were free to move around the campus unsupervised after school (Def.'s Reply to Pl.'s A.S.M.F. ¶ 94) could lead a jury to conclude that the danger that one student could injure another after school was self-evident, and Cheverus should have reasonably foreseen this possibility. *See, e.g., Mullins*, 449 N.E.2d at 335 & n.7 (threat of criminal acts of third parties was self-evident due to concentration of young women on college campus who are living away from home for the first time). Thus, there is a genuine question of material fact as to whether the harm that befell Patrick was reasonably foreseeable by Cheverus.

There is also an issue regarding to whom the duty is owed. Plaintiffs have not addressed this issue in any manner, and Cheverus has only raised the matter in the context of the infliction

---

[1] In fact, the lack of such policy could arguably provide evidence that Patrick's injuries were not foreseeable; that is, it is conceivable that Cheverus does not have a policy for handling after-school emergencies precisely because Cheverus could not foresee that a student might be injured after school during any non-athletic activity. *See, e.g., Stanton v. Univ. of Me. Sys.*, 2001 ME 96, ¶ 10, 773 A.2d 1045 (the fact that a sexual assault occurring in a college dormitory was foreseeable was evidenced in part by security measures implemented by university); *Mullins v. Pine Manor Coll.*, 389 Mass. 47, 449 N.E.2d 331, 337 (Mass. 1983) (evidence that university took precautions to protect students against criminal acts of third parties supported the inference that such criminal acts were foreseeable).

of emotional distress claim; yet, the question is relevant to the negligence claims as well. The parties agree that Cheverus's duty arises out of a "special relationship between it and its *students*." (Def.'s Mot. Summ. J. 11; *see also* Pl.'s Opp'n to Def.'s Mot. Summ. J. 7 ("Of particular significance to this case is the fact that Cheverus owed a fiduciary duty *to Patrick Griffin*") (emphasis added).) Plaintiffs have not argued for or directed the Court to any authority supporting the notion that this duty extends to John and Devdra Griffin. Even the language of Plaintiffs' Complaint alleges all of the elements of negligence with regard to Patrick, but only alleges the element of damages with respect to John and Devdra Griffin. Because John and Devdra Griffin have failed to properly allege – and much less support – a claim for negligence, Cheverus is entitled to summary judgment on these counts as to these Plaintiffs. Nonetheless, for the reasons discussed above, summary judgment cannot be granted on Patrick Griffin's negligence claims against Cheverus.

## B. Count V: Breach of implied contract

The existence of a contract, express or implied, is a question of fact. *Stanton*, 2001 ME 96, ¶ 12, 773 A.2d 1045. An implied contract "'refers to that class of obligations which arises from mutual agreement and intent to promise, when the agreement and promise have simply not been expressed in words.'" *Id.* (*quoting* 1 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 1:5, at 20 (4th ed. 1990)). "'To establish a legally binding agreement the parties must have mutually assented to be bound by all its material terms; the assent must be manifested in the contract, either expressly or impliedly; and the contract must be sufficiently definite to enable the court to determine its exact meaning and fix exactly the legal liabilities of the parties.'" *Id.* ¶ 13 (*quoting Searles*, 1997 ME 128, ¶ 13, 695 A.2d 1206). "For a contract to be enforceable,

the parties thereto must have a distinct and common intention which is communicated by each party to the other." *Id.* (internal quotes omitted).

Plaintiffs' complaint alleges that the Griffins "entered into an agreement with Cheverus wherein Cheverus agreed, for consideration, to accept Patrick Griffin as an enrolled student at its school," and pursuant to that agreement, Cheverus expressly or impliedly was obligated to provide a safe and secure environment and to take all reasonable steps to insure the protection, safety, and welfare of the minor student. No facts exist in the statements of material facts that generate a genuine issue as to whether an implied contract exists based on the conduct of the parties. The only material fact that evidences the possible existence of a contract is that the Griffins pay tuition to Cheverus for Patrick to attend school. Even if this fact is sufficient to demonstrate an agreement to provide education for consideration, it fails to show any terms to which the parties allegedly agreed regarding Cheverus's obligation to provide a safe environment. In the absence of any evidence of the existence of an implied contract, summary judgment is granted in favor of Cheverus on this count.

### C. Count VI: Negligent infliction of emotional distress[2]

Plaintiffs argue Cheverus inflicted emotional distress by failing to protect Patrick, failing to properly notify the Griffin's of Patrick's injuries, and failing to properly investigate the incident. This count is only brought by John and Devdra Griffin individually, not on Patrick's behalf. Negligent infliction requires a plaintiff to set forth facts showing that the defendant owed a duty

---

[2] Although this count of Plaintiff's Complaint is simply entitled "Infliction of Emotional Distress," Plaintiffs state a demand for "Judgment against Cheverus for the negligent infliction of emotional distress..." and make no such demand for judgment for intentional infliction of emotional distress. In their opposition memorandum, Plaintiffs recognize that the standard for intentional infliction of emotional distress is "very high ... and, in many cases, very bad conduct has been held to not meet this standard." (Pl.s' Opp'n to Def.'s Mot. Summ. J. 11.) To address any ambiguity as to whether Plaintiffs intended to plead intentional infliction of emotional distress, the Court finds Plaintiffs have not demonstrated any harm that is of sufficient severity to support a claim for intentional infliction of emotional distress.

to the plaintiff, the defendant breached that duty, the plaintiff was harmed, and the breach caused the plaintiff's harm. *Curtis v. Porter*, 2001 ME 158, ¶ 18, 784 A.2d 18. Duty is particularly limited in negligent infliction claims because "[a]lthough each person has a duty to act reasonably to avoid causing physical harm to others, there is no analogous general duty to avoid negligently causing emotional harm to others." *Id.* A duty to act reasonably to avoid emotional harm to others has only been recognized in bystander liability actions; when there is a special relationship between the defendant and the plaintiff; or, in some instances, when the defendant has committed another tort. *Id.* ¶ 19.

As discussed above with respect to the negligence claims, John and Devdra Griffin have failed to demonstrate that Cheverus owed them a duty. Cheverus's citation to *T.F. v. Spaulding Youth Ctr.* is instructive on this issue. *See* No. 16-cv-37-JL, 2016 U.S. Dist. LEXIS 134501, at *12-13 (D.N.H. Sept. 29, 2016) (finding schools do not have a special relationship with parents and therefore do not have a duty to inform a parent when a student is being bullied). The Court finds that a special relationship giving rise to a duty to act reasonably to avoid emotional harm does not exist between Cheverus and John and Devdra Griffin. They have also not brought a claim based on bystander liability, nor have they demonstrated that Cheverus committed another tort against them. As such, Cheverus had no duty to avoid inflicting emotional harm on John and Devdra Griffin.

Furthermore, a negligent infliction claim requires proof of severe emotional distress. *Curtis*, 2001 ME 158, ¶ 20, 784 A.2d 18. The Griffins have not proffered such proof. Although the prudence of permitting a student to notify a parent of her child's injuries may be questionable, the Griffins have not demonstrated severe emotional harm resulting from the fact that Terryn was the first person to inform Mrs. Griffin of the incident. Further, although the Griffins are

understandably dissatisfied with the results of Cheverus's investigation into the events leading to Patrick's injury, they cannot dispute the fact that every relevant witness was interviewed within two weeks of the date of the incident. The Griffins have put forth no evidence that they were severely emotionally harmed in connection with how the investigation was conducted or the result of the investigation. Even if Cheverus owed and breached a duty to the Griffins, the Griffins have not provided any evidence supporting damages stemming from this cause of action. Cheverus is entitled to summary judgment on this claim.

IV. Conclusion

For the foregoing reasons, Defendant Cheverus High School of Portland's Motion for Summary Judgment is GRANTED in part and DENIED in part. As to Counts II and VIII brought by Plaintiffs John and Devdra Griffin in their individual capacities, judgment is hereby entered in favor of Defendant Cheverus High School of Portland. Judgment is likewise entered in favor of Defendant Cheverus on Counts V and VI. With respect to Counts II and VIII brought by Plaintiffs John and Devdra Griffin as next friends and parents of Patrick Griffin, summary judgment is denied.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _____2/5/18_____

Lance E. Walker, Justice
Maine Superior Court

DOCKETED
2/14/18
mc

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-16-505

JOHN GRIFFIN, individually, and as
next friend and parent of PATRICK
GRIFFIN, a minor,

and

DEVDRA GRIFFIN, individually, and
as next friend and parent of PATRICK
GRIFFIN, a minor,

Plaintiffs

v.

CHEVERUS HIGH SCHOOL OF
PORTLAND,

and

SU-ANNE HAMMOND, individually
and as next friend and parent of JAKOB
HAMMOND, a minor,

and

ANDREW HAMMOND, individually,
and as next friend and parent of JAKOB
HAMMOND, a minor,

and

JOHN/JANE DOES 1-5,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER ON HAMMOND
DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

STATE OF MAINE
Cumberland ss Clerk's Office

JUN 20 2018  12:36 pm
RECEIVED

Before the Court is Defendants Andrew, Su-Anne, and Jakob Hammond's motion for partial summary judgment. Plaintiffs have opposed this motion. The Court has considered the parties' filings, and for the following reasons, the motion is granted.

I. Background

Plaintiffs-Bruce Merrill, Esq.
Defendant Cheverus-J William Druary, Esq.
Hammond Defendants-Elizabeth Stouder, Esq.

The following facts are not in dispute except where otherwise noted. In May 2016, Plaintiff Patrick Griffin ("Patrick") was enrolled in the 10th grade, and Defendant Jakob Hammond ("Jakob") was enrolled in the 11th grade at Cheverus High School. (Defs.' S.M.F. ¶ 1.) Around 4:00 p.m. on May 18, 2016, Patrick and Jakob were on Cheverus's campus watching a javelin event with Meaghan Collins, Terryn MacDonald, and Matthew Thornton. (*Id.* ¶¶ 2-3.) The five teenagers left the athletic field and headed toward the school, at which point Patrick and Jakob became engaged in a physical activity. (*Id.* ¶ 5.) Although the exact nature of that activity remains in dispute, it is uncontested that when Jakob let go of Patrick, Patrick fell to the ground and struck his head. (*See id.* ¶ 7.)

Defendants Andrew Hammond ("Andrew") and Su-Anne Hammond ("Su-Anne") are Jakob's parents. (*Id.* ¶ 14.) Neither Andrew nor Su-Anne were present at Cheverus before or during the May 18, 2017 incident between Jakob and Patrick, nor did they have prior knowledge that Jakob would be engaged in physical horseplay with Patrick that day. (*Id.* ¶¶ 15-16.) Prior to that date, Andrew and Su-Anne had no knowledge of any violent tendencies belonging to Jakob.[1] (*Id.* ¶ 17.) At the time of the incident, Jakob was taking a medication called Fluoxetine and seeing a counselor for depression. (Pls.' A.S.M.F. ¶¶ 44-45, 48-50.)

Plaintiffs filed their Complaint on December 15, 2016, bringing counts for, *inter alia*, negligence and negligent infliction of emotional distress against Andrew, Su-Anne, and Jakob. With this motion, the Hammond defendants request summary judgment on Counts III, IV, and VIII of Plaintiffs' Complaint to the extent they state a cause of action against Andrew and Su-Anne for negligent infliction of emotional distress. Defendants further request summary

---

[1] Plaintiffs' response to this statement of material fact is qualified and asserts that Su-Anne was aware Jakob was having emotional problems and was taking a medication used to treat depression or bipolar disorder. (Pls.' Opp'n to Defs.' S.M.F. ¶ 17.) As explained more fully in this Order, the Court agrees with Defendants that these assertions do not establish or create an inference that either parent knew of Jakob having any violent tendencies.

judgment on Counts I and VIII to the extent they state a cause of action against Jakob for negligent infliction of emotional distress upon John and Devdra Griffin. Finally, Defendants request summary judgment on Counts III, IV, and VIII to the extent they state a cause of action against Andrew and Su-Anne for negligence.

II. Standard of Review

Summary judgment is appropriate if, based on the parties' statements of material facts and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. "A material fact is one that can affect the outcome of the case. A genuine issue of material fact exists when the factfinder must choose between competing versions of the truth." *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821 (internal citation and quotation marks omitted). When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

If the moving party's motion for summary judgment is properly supported, the burden then shifts to the non-moving party to respond with specific facts indicating a genuine issue for trial in order to avoid summary judgment. M.R. Civ. P. 56(e). When a defendant moves for summary judgment, the plaintiff must respond with evidence establishing a *prima facie* case. *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897. The evidence proffered by the plaintiff "need not be persuasive at that stage, but the evidence must be sufficient to allow a factfinder to make a factual determination without speculating." *Estate of Smith v. Cumberland Cnty.*, 2013 ME 13, ¶ 19, 60 A.3d 759. If a plaintiff fails to present sufficient evidence, then the defendant is entitled to summary judgment. *Watt*, 2009 ME 47, ¶ 21, 969 A.2d 897.

III. Discussion

*A. Counts I, III, IV, and VIII: Negligent infliction of emotional distress*

Like a claim for general negligence, a claim for negligent infliction of emotional distress requires a plaintiff to set forth facts showing that the defendant owed a duty to the plaintiff, the defendant breached that duty, the plaintiff was harmed, and the breach caused the plaintiff's harm. *Curtis v. Porter*, 2001 ME 158, ¶ 18, 784 A.2d 18. However, duty is particularly limited in negligent infliction claims because "[a]lthough each person has a duty to act reasonably to avoid causing physical harm to others, there is no analogous general duty to avoid negligently causing emotional harm to others." *Id.* A duty to act reasonably to avoid emotional harm to others has only been recognized in bystander liability actions; when there is a special relationship between the defendant and the plaintiff; or, in limited instances, when the defendant has committed another tort that allows for the recovery of emotional distress damages. *See id.* ¶ 19.

The Hammond defendants argue they are not liable to John Griffin ("John") and Devdra Griffin ("Devdra") for negligent infliction of emotional distress because John and Devdra have not alleged bystander liability, the existence of a special relationship between the parties, or an independent tort that provides a proper basis for recovery. Plaintiffs concede they have not brought a claim based on bystander liability, and they do not argue that any of the Hammonds have a special relationship with any of the Griffins giving rise to a duty to avoid emotionally harming them.

As to Andrew and Su-Anne, Plaintiffs argue their negligence claims in Counts III and IV are independent torts upon which their claims for negligent infliction of emotional distress are premised. The Law Court has stated that a tort is not independent of a negligent infliction claim when damages for emotional suffering are available under the tort, as the negligent infliction claim is usually subsumed under any award entered on the separate tort.[2] *See id.* Such is the case

here. Because damages for emotional suffering are available in a negligence action, this tort is not independent of a claim for negligent infliction of emotional distress; thus, the negligence claims against Andrew and Su-Anne do not provide a basis for claims for negligent infliction of emotional distress. As such, the Court finds no legal basis for John and Devdra's claims for negligent infliction of emotional distress against Andrew and Su-Anne.

As to Jakob, Plaintiffs' opposition makes no argument as to why Jakob is liable to John and Devdra for negligent infliction of emotional distress, as alleged in Count I of Plaintiffs' Complaint. Again, there is no special relationship between Jakob and the Griffins. There is also not an independent tort on which to base a negligent infliction claim; the tort alleged in Count I (assault) is *Patrick's* claim against Jakob, not John and Devdra's claim. The claim John and Devdra have attempted to bring against Jakob is perhaps most properly characterized as a bystander claim in that John and Devdra are attempting to recover damages for emotional suffering occasioned by an injury to their son; however, Plaintiffs have not made and could not make any argument that John and Devdra can satisfy each of the elements of a bystander claim. *See Cameron v. Pepin*, 610 A.2d 279, 284-85 (Me. 1992) (bystander claim requires claimant to show she was at the scene of the accident, she suffered serious mental distress as a result of contemporaneously perceiving the accident, and she was closely related to the victim). The Court therefore finds no legal basis for John and Devdra's claim for negligent infliction of emotional distress against Jakob.

The Court finds Jakob is entitled to summary judgment in his favor on the negligent infliction of emotional distress claim brought against him by John and Devdra in Count I of Plaintiffs' Complaint. The Court further finds Andrew and Su-Anne are entitled to summary

---

[2] As the Court explained, "[A]lthough negligent infliction claims are now routinely added to complaints stating a cause of action in tort, this practice is rarely necessary unless the claim is made by a bystander or against one with a special relationship to the plaintiff." *Id.* ¶ 20.

judgment in their favor on the negligent infliction of emotional distress claim brought against them in Counts III and IV of Plaintiffs' Complaint. To the extent Count VIII also states a claim for negligent infliction of emotional distress against Jakob, Su-Anne, or Andrew inflicted upon John and Devdra, the Court finds Jakob, Su-Anne, and Andrew are also entitled to summary judgment in their favor on such claim.

### B. Counts III, IV, and VIII: Negligence

A *prima facie* case for negligence requires a plaintiff to establish a duty owed, a breach of that duty, and an injury to the plaintiff that is proximately caused by a breach of that duty. *Searles v. Trs. of St. Joseph's Coll.*, 1997 ME 128, ¶¶ 5, 6, 8, 695 A.2d 1206. In Count III, Plaintiffs allege, "Su-Anne and Andrew Hammond owed a duty, as parents, to notify the Plaintiffs and Cheverus of the known violent and assaultive behavior of their minor son, Jakob Hammond." (Pls.' Compl. ¶ 52.) In Count IV, Plaintiffs allege, "Su-Anne and Andrew Hammond owed a duty, as parents, to exercise reasonable care to control and supervise their minor son, Jakob Hammond, so as to prevent him from negligently and/or intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to others." (*Id.* ¶ 63.) Plaintiffs further allege that Andrew and Su-Anne knew or had reason to know that Jakob "exhibited violent and assaultive behavior against others" and that they knew or had reason to know that "they had the ability and responsibility to control their minor son" and of "the necessity and opportunity for exercising such control." (*Id.* ¶¶ 64-65.)[3]

---

[3] Count VIII purports to be a general claim for negligence against all Defendants. Although the parties seem to agree that either this count does not properly allege a claim for negligence against Andrew and Su-Anne, or that this claim is no longer active against Andrew and Su-Anne, the Court now clarifies that, for the reasons discussed in regard to Counts III and IV, Andrew and Su-Anne are entitled to summary judgment in their favor to the extent Count VIII states an active claim for negligence against them.

Maine has adopted the test set forth in section 316 of the Restatement (Second) of Torts to define when a parent may be liable for harm their child causes to another. *See Merchant v. Mansir*, 572 A.2d 493, 493-94 (Me. 1990). That test states:

> A parent is under a duty to exercise reasonable care so as to control his minor child as to prevent it from intentionally harming others or from so conducting itself to create an unreasonable risk of bodily harm to them, if the parent
>
> > (a) knows or has reason to know that he has the ability to control his child, and
> > (b) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 316 (1965). Maine courts have interpreted section 316 as imposing a narrow duty on parents, requiring that the parent knew or should have known of a "specific danger" posed by their child. *Koharian v. Ureneck*, No. CV-04-712, 2005 Me. Super. LEXIS 143, at *7 (Oct. 28, 2005); *see, e.g., Bedard v. Bateman*, 665 A.2d 214, 215 (Me. 1995) (because they had only observed their minor daughter operating a jet ski in a reasonable and caution manner, parents had no knowledge or reason to know of necessity for exercising control over daughter's use of jet ski at time of accident); *Merchant*, 572 A.2d at 494 (father had no knowledge or reason to know of plaintiff child's visit to his home at time his child supplied plaintiff with defective bicycle). In *Koharian*, even despite the minor child's documented history of violence, the defendant father was not liable for negligence when his son assaulted another child because there was no evidence the father knew or should have known that his son would commit the specific act of violence on the night of the assault. *Koharian*, 2005 Me. Super. LEXIS 143, at *8. As stated by the Court: "no parent can be ever-present in his child's life, and § 316 does not impose liability on a parent for not being present at a fateful moment when that child decides to commit a violent act." *Id.*

In the present case, not only have Plaintiffs failed to adduce any evidence of prior violent tendencies of Jakob's that may have put his parents on notice of a need to exercise some measure of control over him, but it is undisputed that neither Andrew nor Su-Anne were present when the incident in question between Jakob and Patrick occurred. Plaintiffs' theory of liability with respect to Counts III and IV appears to rest solely on the facts that, in December 2015, Jakob had asked Su-Anne to see a counselor for "grief, depression and the 'why' of life" and that Jakob was taking the prescription medication Fluoxetine, which is prescribed for depression. (Pls.' Opp'n to Defs.' Mot. Summ. J. 8.) Plaintiffs allege Su-Anne therefore owed a duty to notify Cheverus of Jakob's counseling for depression and to otherwise control and supervise her son. (*Id.*) These facts are insufficient to establish that either Andrew or Su-Anne had a duty to notify Plaintiffs or Cheverus of anything regarding Jakob or to control Jakob at the time the incident occurred. Especially in the absence of any expert testimony on this issue, the Court will not find, as a matter of law, that these facts are sufficient to demonstrate that either Su-Anne or Andrew knew or should have known of the necessity and opportunity to exercise control over Jakob to any greater extent than they had already done by seeking professional help for his emotional difficulties.[4] Furthermore, even if Jakob's depression were sufficient to generate a fact issue as to whether he had known violent tendencies, as discussed above, because his parents were not present at school at the moment of the incident, they neither knew nor should have known that their son posed a specific danger to another child and therefore cannot be charged with knowledge of the necessity and opportunity to exercise control over their son.

---

[4] Indeed, it seems that when Jakob informed his mother that he was experiencing some emotional difficulty, she did exactly as a mother should do: she took him to speak to a counselor and, presumably at his counselor's recommendation, put him on medication.

Absent any duty, Plaintiffs cannot support a claim for negligence against Andrew and Su-Anne. Thus, Andrew and Su-Anne are entitled to summary judgment in their favor on the negligence claims against them in Counts III, IV, and VIII of Plaintiffs' Complaint.

IV. Conclusion

For the foregoing reasons, the Hammond defendants' Motion for Partial Summary Judgment is GRANTED. As to Counts I and VIII of the Complaint, judgment is hereby entered in favor of Defendant Jakob Hammond on the claim for negligent infliction of emotional distress brought by John and Devdra Griffin in their individual capacities. As to Counts III and IV of the Complaint, judgment is hereby entered in favor of Defendants Andrew and Su-Anne Hammond. To the extent it states any cause of action against Andrew and Su-Anne Hammond, judgment is likewise entered in their favor on Count VIII of the Complaint.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _____6/20/18_____

_____
Lance E. Walker, Justice
Maine Superior Court

Entered on the Docket: 6/22/18

mc/

STATE OF MAINE
CUMBERLAND, ss.

JOHN GRIFFIN, individually, and as
next friend and parent of PATRICK
GRIFFIN, a minor,

and

DEVDRA GRIFFIN, individually, and
as next friend and parent of PATRICK
GRIFFIN, a minor,

        Plaintiffs

     v.

CHEVERUS HIGH SCHOOL OF
PORTLAND,

and

SU-ANNE HAMMOND, individually
and as next friend and parent of JAKOB
HAMMOND, a minor,

and

ANDREW HAMMOND, individually,
and as next friend and parent of JAKOB
HAMMOND, a minor,

and

JOHN/JANE DOES 1-5,

        Defendants.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-16-505

ORDER ON PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY
JUDGMENT

STATE OF MAINE
Cumberland ss Clerk's Office

JUN 20 2018 12:36PM

RECEIVED

Before the Court is Plaintiffs' motion for partial summary judgment. The Hammond Defendants and Defendant Cheverus High School ("Cheverus") have opposed this motion. The Court has considered Plaintiffs' motion, as well as the oppositions and reply, and for the following reasons, now denies the motion.

Plaintiffs–Bruce Merrill, Esq.
Defendant Cheverus–J William Druary, Esq.
Hammond Defendants–Elizabeth Stouder, Esq.

## I. Background

The following facts are not in dispute except where otherwise noted. In May 2016, Plaintiff Patrick Griffin ("Patrick") was enrolled in the 10th grade, and Defendant Jakob Hammond ("Jakob") was enrolled in the 11th grade at Cheverus High School. (Pls.' S.M.F. ¶ 1.) Around 4:00 p.m. on May 18, 2016, Patrick and Jakob were on Cheverus's campus with Meaghan Collins ("Meaghan"), Terryn MacDonald ("Terryn"), and Matthew Thornton ("Matthew") after classes were over. (*Id.* ¶ 2.) After watching a javelin competition, the five teenagers walked from the athletic field toward the school, at which point Patrick and Jakob became engaged in a physical activity, which Terryn and Meaghan later described as fooling around. (*Id.* ¶ 6.)[1]

Defendants adamantly deny Plaintiffs' factual assertions regarding the interaction between Patrick and Jakob, including whether or not Jakob held Patrick in a headlock or chokehold, whether Patrick asked to be released, Patrick's condition immediately after Jakob released him, and how the other teenagers reacted as the incident was occurring. (*See* Hammond Defs.' Opposing S.M.F. ¶¶ 7-16.) It is generally uncontested that the other teenagers testified that after the interaction, Patrick fell to backwards to the ground, where he began shaking and foaming at the mouth. (*See* Pls.' Reply S.M.F. ¶¶ 17-18, 20.) Patrick was thereafter transported to Maine Medical Center for treatment, where he remained for four days. (*Id.* ¶¶ 24, 27.)

Plaintiffs filed their Complaint on December 15, 2016. The Complaint includes eight counts against a number of parties. With this motion, Plaintiffs request summary judgment on Count I, a claim against Jakob for negligence.[2]

---

[1] Although Defendants' response to this Statement of Material Fact is qualified, the response only further explains what the girls meant by "fooling around." (*See* Hammond Defs.' Opposing S.M.F. ¶ 6.) It appears the parties agree that both girls characterize the interaction in question as a playful interaction.

## II. Standard of Review

Summary judgment is appropriate if, based on the parties' statements of material facts and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. "A material fact is one that can affect the outcome of the case. A genuine issue of material fact exists when the factfinder must choose between competing versions of the truth." *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821 (internal citation and quotation marks omitted). When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

When a plaintiff moves for summary judgment, the plaintiff has the burden of establishing each element of its claim without dispute as to any material fact in the record. *Cach, LLC v. Kulas*, 2011 ME 70, ¶ 8, 21 A.3d 1015. If the plaintiff's motion for summary judgment is properly supported, the burden shifts to the defendant to respond with specific facts indicating a genuine issue for trial. M.R. Civ. P. 56(e). If an opposing party fails to properly respond, the moving party's factual assertions will not be deemed admitted merely because of the opposing party's failure to respond. *Cach, LLC*, 2011 ME 70, ¶ 9, 21 A.3d 1015. The moving party must still properly support each factual assertion with citation to the record and therefore still has the burden of establishing the absence of a genuine issue of material fact. M.R. Civ. P. 56(h)(4); *Cach, LLC*, 2011 ME 70, ¶ 9, 21 A.3d 1015.

## III. Discussion

Initially, it seems clear that the dispute surrounding the events leading to Patrick's injuries signifies the existence of genuine issues of material fact, and the Hammond Defendants

---

[2] Count I is titled "Assault." (Pls.' Compl. 5.) However, Plaintiffs pleaded the elements of negligence under this Count and have argued this motion as a motion to grant summary judgment for a negligence claim. Thus, the Court will treat Count I as a claim for negligence.

and Cheverus have argued as much. Plaintiffs' contention, however, is that regardless of precisely what Jakob did to Patrick, whether or not it began as consensual "horse play" and whether or not Jakob's actions were intentional or negligent, it is undisputed that Jakob's actions caused harm to Patrick. (Pls.' Reply to Opp'n to Pls.' Mot. Summ. J. 4-6.)

However, even Plaintiffs' reply to the Hammond Defendants' opposition highlights an important fact question: "Jakob Hammond's denials that he put Patrick in a headlock, choked him into unconsciousness, was the cause of Patrick's fall, or the cause of his accident, are simply not supported by the other three witnesses to this incident." (*Id.* at 3.) Assuming *arguendo* that Jakob's account of the details of the incident is wholly inconsistent with the testimony of all three other witnesses (and the Court would posit that this is not the case), Plaintiffs are nonetheless asking this Court to make several credibility determinations and to choose between at least two competing versions of the truth. This is not the province of the Court on summary judgment. *See Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821. Plaintiffs are also asking the Court to infer negligence from the fact of an injury or accident. As observed by Defendant Cheverus, this is not a permissible inference under Maine law. *Duchaine v. Fortin*, 159 Me. 313, 318, 192 A.2d 473; *Marr v. Hicks*, 136 Me. 33, 36, 1 A.2d 271.

Defendants have noted the existence of a number of other unresolved fact questions. In particular, the Court agrees that an inquiry into facts surrounding a possible finding of comparative negligence will likely be important to the resolution of this case. (Def. Cheverus's Opp'n to Pls.' Mot. Summ. J. 3.) The need for such factfinding directly contradicts Plaintiffs' assertion that the only material facts necessary to the determination of the negligence issue presented in Count I are that Jakob and Patrick had a physical interaction, and Patrick thereafter

fell and was injured. Unequivocally, the Court finds there are genuine issues of material fact sufficient to warrant the denial of this motion.

IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for partial summary judgment is DENIED. The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _____6/20/18_____

_____
Lance E. Walker, Justice
Maine Superior Court

Entered on the Docket: 6/22/18